GETTY SYNTHETIC FUELS, INC., Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

First District (5th Division)    No. 81-1071

Opinion filed January 29, 1982.

Louis M. Rundio, Jr., of Chicago (McDermott, Will & Emery, of counsel), for petitioner.

Tyrone C. Fahner, Attorney General, of Chicago (William J. Barzano, Jr., Assistant Attorney General, of counsel), for respondents.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Petitioner (Getty) appeals the finding of the Illinois Pollution Control Board (Board) that the proper reference point for applying the emission limitation of Rule 205(f) (1) (C) of the Illinois Pollution Control Board Rules and Regulations is the emission discharge from the plant vent of its methane recovery facility rather than that naturally emitted from the landfill on which it operates its facility.

On April 7, 1980, Getty submitted to the Illinois Environmental Protection Agency (IPEA) an application for a permit to construct a methane recovery facility at a waste disposal site know as the CID Landfill. The facility was designed to extract each 5 million cubic feet of landfill gas generated by the decomposition of solid waste. The process includes a gas gathering and transporting system consisting of a network of recovery wells bored into the landfill and a series of underground pipes which connect the wells to a processing plant. The landfill gas contains a high percentage of methane which is purified by removing various unwanted components. The product is a pipeline quality gas suitable for industrial and residential use. In the methane recovery process approximately 220 pounds per hour of nonmethane hydrocarbons (heavy hydrocarbons) are separated out of the gas, of which about 90% is disposed of elsewhere or returned to the landfill, and the remaining 20 pounds per hour are emitted into the atmosphere. The Getty permit application indicated that the heavy hydrocarbons would be removed through a condensation process and that the remaining residual heavy hydrocarbons would be removed through a process know as "air stripping" in which air is introduced permitting the removal of heavy hydrocarbons by vaporization.

The IEPA determined that the methane recovery facility was a new source of waste gas disposal and was thus subject to Rule 205(g)(1),

"Petroleum Refinery and Petrochemical Manufacturing Process Emissions," of the Illinois Pollution Control Board (Board) Rules and Regulations for Air Pollution Control. This rule limits the emission of organic material into the atmosphere to a "maximum of eight pounds per hour" and, as an alternate standard, provides that emissions in excess of that amount are allowable "if such emissions are controlled by air pollution control methods or equipment approved by the Agency capable of reducing by 85 percent or more the uncontrolled organic material that would otherwise be emitted into the atmosphere." The IPEA determined that the reference point for the 85% reduction option was the 20 pounds per hour of heavy hydrocarbons gas naturally emitted from the landfill.

While awaiting action on its application for a permit, and in order to proceed with construction, Getty on August 5, 1980, indicated in a modification to its application that the recovery facility would be operated to meet the 8-pounds-per-hour alternative by a new process it was developing known as "gas stripping" instead of air stripping method.

On August 21, 1980, the IEPA granted the construction permit subject to the condition that Getty comply with the requirement of Rule 205(g) (1) (C), which meant that the reference point for the 85% reduction would be the 20 pounds per hour of emission at the plant vent rather than the 220 pounds per hour emitted from the landfill. Getty then sought Board review of IEPA's determinations (1) that its recovery facility was a petroleum refinery or a petrochemical manufacturing process subjecting it to Rule 205(g) (1); and (2) that the applicable reference point for the 85% reduction requirement was the 20 pounds per hour of heavy hydrocarbons emitted from the plant itself. On March 19, 1981, the Board determined (1) that the methane recovery facility here was not a petroleum refinery or a petrochemical manufacturing process and thus was not subject to Rule 205(g) but, rather, to the general organic emissions Rule 205(f) (which contains virtually the same emissions requirements as Rule 205(g));[1] and (2) that the emission subject to the 85% reduction alternative was that discharged from the facility. One member of the Board then filed a concurring opinion on April 27.

In the meantime, Getty had filed a notice of appeal on April 21 with the clerk of the Illinois Pollution Control Board following which, on May 4, 1981, it filed in this court a petition for review of the Board's decision. The IEPA filed a motion to dismiss the petition for lack of jurisdiction, asserting that the petition was not timely and that it failed to name the Board as a respondent. On May 19, Getty moved to amend its notice of appeal to restyle it as a "Petition to Review," to extend the time to file it, and to name the Board as a respondent. On May 21, the motion panel of

---

[1] No appeal has been taken by the IEPA from this determination.

this court continued the motions for consideration and disposition after the filing of the record on appeal.

OPINION

We first address the issues raised in respondent's motion to dismiss, in which they assert that jurisdiction is lacking because petitioner failed to file a timely petition for review in this court and, in any event, did not name all necessary parties as respondents.

Taken together, sections 29 and 41 of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, pars. 1029, 1041) provide for direct review by this court of Illinois Pollution Control Board decisions. Section 29 states that "any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under section 41 of this Act." Section 41 provides in pertinent part:

"Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party adversely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review within thirty-five days after entry of the order or other final action complained of * * * except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose * * *."

In addition, the exclusive procedure for direct review of orders of an administrative agency in the appellate court is found in Supreme Court Rule 335 (Ill. Rev. Stat. 1979, ch. 110A, par. 335), which states in part that a petition for review shall be filed in the appellate court and must name as respondents the agency and all other parties of record. Subsection (h) (1) thereof further provides that "[i]nsofar as appropriate, the provisions of Rules 301 through 373 (except for Rules 321 through 326) are applicable to proceedings under this rule."

Respondents maintain in their motion, and we agree, that the notice of appeal filed by Getty with the Board on April 21, 1981, was not in compliance with Supreme Court Rule 335. Respondents also argue that we lack jurisdiction to hear this appeal because Getty's petition for review, filed in this court on May 4, 1981, was not in compliance with Rule 335 in that it was filed 46 days after the Board's March 19 final order and because Getty did not name the Board as respondent.

■■ The petition for review required under Rule 335 serves as notice of appeal. (See Committee Comments to Rule 335 (Ill. Rev. Stat., ch. 110A, par. 335, Committee Comments, at 121 (Smith-Hurd 1976)).) We are of the opinion that Rule 303(e) (Ill. Rev. Stat. 1979, ch. 110A, par. 303(e)),

which provides for an extension of time in certain circumstances—"On motion supported by a showing of reasonable excuse for failure to file a notice of appeal on time * * * filed in the reviewing court within 30 days after expiration of the time for filing a notice of appeal, the reviewing court may grant leave to appeal * * *" is applicable through Rule 335(h) (1), and we find that the May 19 motions to amend the notice of appeal filed in this court and for an extension of time to file a petition for review satisfy the requirements of the Rule. Accordingly, we conclude that we have jurisdiction over this appeal.

We next address Getty's contention that the Board erred in its determination that the proper reference point for the 85% reduction provision of Rule 205(f) (1) (C) was the 20 pounds per hour of heavy hydrocarbons emitted from the methane recovery facility rather than the 220 pounds per hour naturally emitted from the landfill.

■■■ The appropriate standard for review of Board decisions depends on whether the Board was acting in a quasi-legislative or quasi-judicial capacity. (*Monsanto v. Pollution Control Board* (1977), 67 Ill. 2d 276, 367 N.E.2d 684.) Where the Board reviews the denial of a construction permit, it is acting in a quasi-judicial function, and the appropriate standard for review by this court is the manifest weight of the evidence. (*Environmental Protection Agency v. Pollution Control Board* (1980), 88 Ill. App. 3d 71, 410 N.E.2d 98.) Furthermore, the reviewing court must defer to, and will not overrule, the Board's interpretation of its own rules and regulations unless such construction is plainly erroneous. *Modine Manufacturing Co. v. Pollution Control Board* (1976), 40 Ill. App. 3d 498, 351 N.E.2d 875.

Thus, the question presented is whether the Getty facility emission was the proper reference point for the 85% reduction provision of Rule 205(f) (1) (C). In this regard, we initially note that Getty concedes that its facility (a) is an emission source which is defined in Board Rule 101 as "any equipment or facility of a type capable of emitting specified air contaminants to the atmosphere"; and (b) is subject to Rule 205(f), which specifically states that "no person may cause or allow the discharge of more than 8 pounds per hour of organic material into the atmosphere from any emission source" except "emissions in excess of that amount are permitted in such emission is controlled by * * * any other air pollution control equipment approved by the Agency capable of reducing by 85 percent or more the uncontrolled organic material that would be other-wise emitted into the atmosphere."

In support of its contention that the Board's reference point determi-nation was against the manifest weight of the evidence, Getty argues that the evidence disclosed certain environmentally beneficial results which were not considered by the Board—namely, that in using air stripping

process its facility completely fulfilled the objective of the 85% reduction provision in that its emission was only 20 pounds per hour, whereas that of the landfill was 220 pounds per hour; that the operation of its facility transforms emissions from an unregulated source (the landfill) into emissions for a regulated source (the facility plant vent); and that unlike normal industrial operations, the facility does not bring about organic emissions, but instead brings about a reduction of the already existing landfill emissions. Furthermore, Getty states that while it agreed that its facility was not a "pollution control device" defined in Board Rule 101 as "any equipment or facility of a type intended to eliminate, prevent, reduce or control the emission of specified air contaminants to the atmosphere," the Board rejected its argument that by way of analogy it could have been treated as a pollution control device for the purpose of the application of the 85% reduction standard. Additionally, Getty argues that while there was testimony that the use of a gas stripping process in place of air stripping would reduce the emission from its facility to the 8 pound per hour alternative, the testimony shows that the gas stripping process is impractical because of excessive cost and because the 8-pound-per-hour standard could not be met if the present facility was expanded beyond the present use of 5 million cubic feet of gas or in a larger facility.

It thus appears to be Getty's position that because of its unique aspects, the facility is a hybrid of a processing plant and emission reduction device which, while it processes methane, also accomplishes a substantial reduction in heavy hydrocarbon emissions and, because it was a type of facility not contemplated when Rule 205 was adopted, its operation using air stripping achieves the 85% reduction standard of that Rule and, in view thereof, Getty argues that the Board improperly determined the facility plant vent to be the reference point for that standard.

■■ We are of the belief, however, that the Board's decision was not against the manifest weight of the evidence. Furthermore, it appears to us that any interpretation other than made by the Board of its own rule would be inconsistent therewith, as Rule 205(f) (1) (C) specifically limits the 85% alternative to air pollution control equipment. Moreover, we are of the opinion that, in effect, Getty is asking this court to devise a new rule applicable to a methane recovery facility or to create an exception to Rule 205(f). While the Getty recovery facility may not have been a type of system contemplated by the Board when its rules were adopted, and although the decision appears to apply form over substance as the facility unquestionable produces environmentally beneficial results, we do not view it to be within our authority to change, amend, or revise its rules or regulations. The Board, however, pursuant to its authority under the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, pars. 1028,

1036, 1037), has provided specific procedures for the adoption and amendment to Board regulations (Illinois Pollution Control Board Procedural Rules 201 through 216) and for the creation of variances for relief from particular provisions of those regulations (Illinois Pollution Control Board Procedural Rules 401 through 412).

In sum, we have concluded that this court has jurisdiction over this appeal, and we affirm the decision of the Board.

Affirmed.

MEJDA and WILSON, JJ., concur.