WASTE MANAGEMENT OF ILLINOIS, INC., Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.—BOARD OF TRUSTEES OF JOLIET TOWNSHIP, Petitioner, *v.* WASTE MANAGEMENT OF ILLINOIS, INC., *et al.*, Respondents.

Third District Nos. 3—83—0325, 3—83—0339 cons.

Opinion filed March 9, 1984.

Louis R. Bertani and Thomas R. Wilson, both of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, and Richard V. Houpt and Donald J. Moran, both of Pedersen & Houpt, of Chicago, for Waste Management of Illinois, Inc.

James Yoho, of Champaign, for Board of Trustees of Joliet Township.

Edward F. Petka, State's Attorney, of Joliet (Scott E. Nemanich and Richard J. Siegel, Assistant State's Attorneys, of counsel), for respondent Will County Board.

Lesley R. Marr, of Elwood, for respondent Lesley R. Marr, *pro se.*

Martha C. Lembcke, of Elwood, for respondent Martha C. Lembcke, *pro se.*

Norma T. Rourke, of Joliet, for respondent Norma T. Rourke, *pro se.*

Gisela Topolski, of Joliet, for respondent Gisela Topolski, *pro se.*

JUSTICE ALLOY delivered the opinion of the court:

Waste Management of Illinois, Inc., seeks review over the decision of the Illinois Pollution Control Board (hereinafter PCB), which affirmed the decision of the County Board of Will County (hereinafter Board). Waste Management had filed a request for site approval with the Board for expansion of their existing Will County ESL landfill, which is a regional pollution control facility. The Board denied Waste Management's request for expansion, finding, after hearings, that Waste Management had failed to show that the facility was necessary to accommodate the waste needs of the area it was intended to serve and that it had failed to show that the facility was so designed, located and proposed to be operated so as to protect the public health, safety and welfare. (Ill. Rev. Stat. 1983, ch. 111½, pars. 1039.2(a)(1), 1039.2(a)(2).) Upon review, the PCB affirmed the denial of the permit request, based upon Waste Management's failure to show that the facility was necessary. The PCB did not rule upon the second basis for denial of the Board, that being the safety aspects, concluding that the decision was technical and not within the purview of the Board. Waste appeals from the PCB ruling affirming the Board's decision denying the permit on the issue of necessity, while the county and other intervenors have cross-appealed the PCB's decision that the Board did not have the power to determine the safety-related questions.

The record reveals that Waste has operated a sanitary and special and hazardous waste landfill on a 110-acre site in unincorporated Will County. This ESL landfill receives municipal solid waste as well as special and hazardous wastes. Waste Management's request to the Will County Board was for site approval of an expansion of the existing landfill operation. The proposed expansion facility, to replace the existing facility, would be operated on 110 acres of land adjoining the

existing ESL facility. The testimony before the County Board's landfill advisory committee covered 17 days and the transcript runs to 2833 pages. The pertinent part of the record for this appeal is that concerning the evidence relating to the issue of the need for the facility.

At the heart of the county's rejection of Waste Management's application on the basis of a lack of need, was its conclusion that other landfills in the area had sufficient capacity to accommodate the waste needs of the area. Waste Management, on the other hand, emphasized its evidence that the capacity of the existing ESL facility would be used in from two to four years, and further that other facilities were insufficient to handle the waste loads accepted at the existing facility. Waste Management argued strenuously to the PCB that economic considerations, centering upon the costs of transportation, made use of other, non-Will County landfills undesirable for handling Will County wastes.

There was a dispute between the county staff and Waste Management concerning which other landfills should be considered in computing available alternatives, as well as concerning the future capacities of those other sites. Illustrative of the differences in the figures emphasized by each side are those used by each side for the Land and Lakes landfill, which at the time of the presentation had been issued a one-year experimental permit. Waste Management took the one year as the projected life of Land and Lakes, while the county staff, and the PCB on review, accepted as accurate an 18-year life. Similarly, Waste Management did not present detailed information respecting hazardous and special waste landfills in the area outside of Will County, even though a substantial amount of such wastes were accepted at the existing ESL in Will County. The county staff, based upon its review and assessment of existing facilities available to handle waste currently disposed of at the existing ESL facility, concluded that existing, available landfills were sufficient to handle the waste production for over 10 years. Based upon this conclusion, the county found that the proposed extension of the ESL facility was not necessary to accommodate the waste needs of the area intended to be served, which petitioner had set as the area currently being served. The county's conclusion was affirmed by the PCB. In its findings, the PCB expressly noted its concurrence with the figures and analysis set forth by the county staff, rejecting contradictory conclusions by Waste Management's experts. The PCB in its opinion and order was specific in addressing the basis for its affirmance:

"Regarding the municipal/special waste, the Board finds that

the manner in which the County addressed the ESL and other available sites in the area intended to be served (in terms of receipts, capacity, remaining life, capacity and location) more than adequately buttresses its rejection of Waste Management's arguments. The applicant can hardly complain that the County failed to include sites that the applicant itself failed to include. The County's analysis * * * projected an 11.1 year remaining life for the sites, but reduced that to 10 years in a footnote on a hypothetical assumption that the ESL site would be dedicated solely to hazardous waste.

In its analysis, the County Staff listed the same sites and projected the same remaining life as did the applicant with two important differences. It assumed an 18-year remaining life for the Land and Lakes site, rather than the projected 1 year experimental permit life utilized by the applicant. Additionally, the County listed the Hamman site, although it did not use a capacity or remaining life figure for this site in its projections.

The applicant insisted that the Land and Lake landfill was operating under a one-year experimental permit and, thus, argued that projecting a remaining life of 18 years is premature * * *. On the other hand, the County included an 18-year remaining life for Land and Lakes in making its determination that 10 years of overall landfill capacity remain for the disposal of 'municipal/sanitary and non-hazardous special wastes in Will County.' * * *

The Board concurs with the County's inclusion of the Land and Lakes site in its analysis. Since the Land and Lakes site had been issued a developmental permit as well as an experimental permit to operate by the Agency, the County could have a reasonable expectation that the Land and Lakes site would operate for its projected 18-year life.

Since the Hamman site also had been issued a developmental permit, the County could also have had a reasonable expectation of its 18-year projected life, and thus included this site also, although it did not do so. * * *

* * *

Regarding the economics of going to other sites, the County staff (and presumably the County Board) did not dispute the applicant's assessment that, from an economic standpoint, it is preferable to have disposal sites in proximity to the population in industrial areas * * *. While not controlling, the economics of greater hauling distances can be germaine to criterion #1. In

this case, however, the Board finds that the economics question was not developed fully enough by the applicant to challenge the County Board's determination that the site was not 'necessary.'

The applicant focused on the remaining life, capacity and proximity of only some of the potential alternate sites, and only generally on the potential for greater hauling costs. However, the applicant did not evaluate what the potential impact would be on those who actually paid for garbage pick-up. Even if an increased economic burden were assumed, (especially in the Joliet area if the ESL site were able to accept municipal waste only for five more years) the applicant's arguments were generalized and incomplete. For example, the applicant failed to describe the potential economic tradeoffs regarding the service areas of other sites within and without the county that might be available to those within the ESL service area.

Regarding hazardous waste disposal needs, the earlier noted misfocus by the County on the 'fair share' concept became especially troublesome since the area intended to be served extended far beyond the boundaries of the County. Again, however, the Board notes that it was not the County's responsibility to demonstrate need, it was the applicant's, and the Board finds that it failed to do so. While the Board feels the applicant satisfactorily delineated the area intended to be served (which naturally become less precise as the service area grows in scope), the applicant failed to present any satisfactory waste 'needs' information about the intended service area with which the County could deal.

The applicant's demonstrations of remaining life and capacity at its own existing site begged the question as to whether other available sites, even those confined to the urban area of northeastern Illinois, could 'pickup the slack' upon its closing.

\* \* \*

Additionally, the applicant failed to explain why it focused primarily on sites only within a 50-mile radius from its site rather than, say, a 100-mile radius. Indeed, the applicant noted that its own site received wastes from an area considerably beyond 50 miles \* \* \*. The County had no real data to evaluate the potential service areas of alternate sites, and apart from its fair share arguments \* \* \* the applicant primarily analyzed the need to expand the present ESL site in order for the site to continue serving its ESL customers. It is not the intent of SB 172 that

an applicant has a right to expand a site in order to stay in business. ***"

■ The question before the PCB was whether the County's decision was contrary to the manifest weight of the evidence (*E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 608, 451 N.E.2d 555), and the PCB concluded that it was not. The manifest weight standard of review also governs appellate court review of decisions by the PCB. (*Getty Synthetic Fuels, Inc. v. Pollution Control Board* (1982), 104 Ill. App. 3d 285, 289, 432 N.E.2d 942.) We find the PCB's decision on the question of necessity not to be contrary to the manifest weight of the evidence, and therefore affirm.

■ At the center of the dispute is the proper construction to be given section 39.2(a)(i) of the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(a)(i)), which states:

"(a) The county board of the county or the governing body of the municipality *** shall approve the site location suitability for such new regional pollution control facility only in accordance with the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve ***."

Relying upon the recent decision in *E & E Hauling*, petitioner Waste Management contends that "necessary" as used in section 39.2(a)(i) means only "expedient" or "reasonably convenient." (*E & E Hauling v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 609.) Using this construction, Waste Management argues that the evidence before the PCB and the county sufficiently demonstrated that the proposed expansion facility was necessary. Waste contends that the county and the PCB improperly imposed an absolute necessity standard in the case, contrary to proper construction. In the *E & E Hauling* case, the Second District Appellate Court affirmed a county board decision which found that a proposed expansion of an existing facility was necessary. The evidence in the record indicated that without the expansion, the waste needs of Du Page County would not be met when the existing facility reached its capacity. (116 Ill. App. 3d 586, 608-09.) The construction by the court in *E & E Hauling*, wherein it adopted the expedient or reasonably convenient approach, must be viewed with the facts in the case, which demonstrated that the proposed expansion was more than expedient or reasonably convenient to meet the waste needs of Du Page County. Rather, there was evidence of real need for the facility. In the instant case, the facts, as found by the county and by the PCB, with support in the record, show that the waste needs of Will County can be handled for 10 years with existing

available facilities within the area now served, without additional facilities being necessary. We agree with the court in *E & E Hauling* that a construction of the pertinent statutory language which required a petitioner to prove absolute necessity would be unworkable and unreasonable. However, we disagree with its statement that "necessary" means only "expedient" or "reasonably convenient." The legislature used the term "necessary" and some of its core meaning, connoting a degree of requirement or essentiality, must be assigned to that use of the word. While we do not construe the language to mean that landfills must be shown to be absolutely necessary, nevertheless we find that they must be shown to be reasonably required by the waste needs of the area intended to be served, taking into consideration the waste production of the area and the waste disposal capabilities, along with any other relevant factors. The evidence in this case, as found by the PCB and the county, indicated that other available facilities were sufficient to meet the future waste needs of the area served, and, therefore, this proposed expansion was not reasonably required to meet those needs. The decision does not foreclose future applications for the site, based upon changes in the relevant factors, whether waste production, other sites, or economic costs of transportation. On this record, however, the PCB is affirmed.

We would also note that had we reversed the PCB on the necessity issue, we would nevertheless have remanded the case back to the PCB for its consideration of the second basis set forth by the county for denying the application. The County had determined that the facility was not so designed, located and proposed to be operated that the public health, safety and welfare would be protected. (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(a)(ii).) The PCB concluded that the safety assessment was beyond the county's jurisdiction and did not reach the issue in its review. In *City of East Peoria v. Pollution Control Board* (1983), 117 Ill. App. 3d 673, 452 N.E.2d 1378, we determined that the county board did have jurisdiction to decide that issue. While Waste Management has requested that we decide the issue, on the facts in the record, we believe the preferable procedure is to remand to the PCB in such cases, so as to receive the benefit of their expertise on review. However, given our affirmance on the issue of necessity, we need not remand this case.

For the reasons stated, the decision of the PCB is affirmed.

Affirmed.

HEIPLE and BARRY, JJ., concur.