THE TOWN OF OTTAWA *et al.*, Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

Third District   No. 3—84—0158

Opinion filed November 30, 1984.—Rehearing denied January 8, 1985.

Timothy J. Creedon III, of Hoffman, Mueller & Creedon, and Robert Eschbach, of Eschbach & Howarter, both of Ottawa, for appellants.

James I. Rubin and Ellen M. Babbitt, both of Butler, Rubin, Newcomer, Saltarelli & Boyd, of Chicago, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

The town of Ottawa and the village of Naplate appeal from an order of the Pollution Control Board affirming the La Salle County Board's decision to grant siting approval to a new regional pollution control facility in La Salle County.

On March 15, 1983, States Land Improvement Corporation (States Land) applied to the La Salle County Board for approval of a proposed site for a nonhazardous sanitary landfill. As the site was to be located in unincorporated La Salle County, such approval is required by section 39(c) of the Environmental Protection Act (Ill. Rev.

Stat. 1983, ch. 111½, par. 1039(c)). Section 39.2 of the Act conditions such approval on six separate criteria which must be met by one seeking approval from the local hearing authority. The only criterion in question in this appeal is whether "the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected ***." Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(a)(ii).

Pursuant to States Land's application, the 29-member county board appointed nine of its members to act as a hearing committee in this matter. Rules of procedure were adopted for the carrying out of these hearings. The hearing committee would ultimately make recommendations on which the full board would act. Nine separate factual hearings were held. States Land's principal opposition came from the town of Ottawa and the village of Naplate. Counsel for these municipalities focused primarily on the health, safety and welfare aspects of the proposed design of the landfill. After all testimony was taken, counsel for States Land, the municipalities and all other interested parties were invited to submit proposed resolutions for the board to adopt. States Land submitted a proposed resolution approving the site with various conditions attached. The municipalities' resolution proposed to reject the site as not meeting several criteria. On August 11, the hearing committee voted 8-1 to adopt the resolution submitted by States Land. Committee member Franzetti, the sole dissenter, proposed the municipalities' resolution as a minority report to the full board.

The full board met in public session on August 15 to consider the matter. By a 20-7 vote, the adoption of the minority report as the findings of the board was rejected. Member Franzetti then sought to introduce amendments to the board's findings which would add new conditions to the siting approval. Ultimately, two new conditions were added (Conditions M and N).

On September 12, 1983, a regular meeting of the board was scheduled for 1 p.m. That morning, States Land's president, Paul De-Groot, telephoned James Hettel, chairman of the county board. De-Groot asked Hettel if he could place some material on the desks of the board members that day. Hettel replied that this could be done. It appears that a DeGroot employee gave a number of copies of a four-page letter to Hettel's secretary. Hettel had his secretary distribute the letter to the members' desks. The letter, authored by States Land's attorney, informed the board that States Land objected to the addition of Conditions M and N, as well as the payment of a $12,500 application fee. Attached was a petition for review to the Pollution

Control Board. The plain import of the letter was that if the resolution as originally approved by the hearing officers was not reinstated, an appeal to the Pollution Control Board would then be taken. After a conversation with the county board's attorney, Hettel instructed his secretary to inform all other attorneys of the receipt of the letter and petition. Counsel for the municipalities eventually arrived at the meeting before discussions on this matter had occurred. At the meeting, the board voted to suspend its procedural rule against reconsideration. This was done by greater than a two-thirds majority. The board also voted to delete Conditions M and N from the siting approval. These final actions are the principal basis of this appeal.

The statutory basis for the municipalities' position is section 40.1(a) of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1040.1(a)). This section requires, *inter alia*, that the Pollution Control Board be satisfied that the procedures used by the local siting authority were in accordance with fundamental fairness. The municipalities argue that the Pollution Control Board should have reversed based on certain allegedly unfair occurrences.

■■ The municipalities charge that the circulation of States Land's resolution to all county board members at a time considerably before its own resolution was circulated constituted a denial of fundamental fairness. The procedural rule stated only that the applicant and intervenors were to file with the hearing officers "a suggested form of Resolution that the party proposes to be adopted by the County Board." The rules are silent as to time limits and means of circulation. At any rate, the record is clear that the hearing committee had all relevant proposals before it on August 11. The record further reveals that the municipalities' case was forcefully presented by a dissenter on the hearing committee, as well as by strong public support at the August 15 meeting. It is difficult to imagine how this disparate access was fundamentally unfair or that the municipalities were substantially prejudiced thereby. *E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555.

The municipalities next contend that the decision by the county board on September 12 to delete Conditions M and N violated fundamental fairness. The rules adopted by the county board did not allow for reconsideration. The municipalities argue that since the proceedings were adjudicatory, it would not be fair to amend procedural rules once the proceedings had been concluded. The Pollution Control Board characterized the addition or deletion of conditions as legislative, thus concluding that an amendment to the procedures was permissible under the board's rule-making powers.

The characterization of these proceedings does not fit comfortably into any particular niche. They are adjudicatory in the sense that the county board takes evidence on the disputed issue of whether the six statutory criteria are satisfied. However, they are legislative in the sense that imposition or deletion of conditions is "[the] promulgat[ion] [of] policy-type rules or standards" *United States v. Florida East Coast Ry. Co.* (1973), 410 U.S. 224, 245, 35 L. Ed. 2d 223, 239, 93 S. Ct. 810, 821.

The Pollution Control Board cited *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 367 N.E.2d 684, as authority for its characterization of the proceedings as rule making. There, the court held that the decision to grant a variance from an environmental regulation was quasi-adjudicatory, but the imposition of conditions on the variance was legislative. However, the situation of the county board here is substantially dissimilar to that of the EPA in the *Monsanto* case. Here, the imposition of Conditions M and N was nothing more than a finding that absent these conditions, the proposed landfill could not satisfy the health, safety and welfare criterion. Similarly, the deletion of these conditions amounted to a finding upon reconsideration that the criterion in question could be met without Conditions M and N. At the least, therefore, the proceedings in question should be characterized as quasi-adjudicatory.

▪ Given this characterization, the question becomes whether fundamental fairness was violated by the allowance of reconsideration. We believe that it was not. It was known at all times that the county board proceeded under Robert's Rules of Order, which allows suspension of procedural rules by a two-thirds vote. Such a vote was taken with counsel for the municipalities present, but not objecting on the grounds cited above. More importantly, administrative bodies should be free to reconsider their decisions. This is part and parcel of the preference for exhaustion of remedies at the administrative level. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.3d 737.) As the Pollution Control Board itself has recognized, "the prejudice to the public by an incorrect decision *** transcends any possible prejudice" to the opponents. (*Waste Management of Illinois, Inc. v. Board of Supervisors* (1982), Ill. PCB 82—55, *rev'd on other grounds* (1983), 117 Ill. App. 3d 673.) While not approving of the "ambush" tactics perpetrated by counsel for States Land here, the allowance of reconsideration to delete the Conditions M and N was not so fundamentally unfair as to cause reversible error.

The municipalities' last procedural objection is that the communications and actions of States Land constituted *ex parte* contacts with

the county board. The contacts in question were the brief telephone call from DeGroot to Hettel and the distribution of the letter from States Land's attorney without prior notice to opposing counsel. An *ex parte* contact is one which takes place without notice and outside the record between one in a decision-making role and a party before it. The Pollution Control Board found that no *ex parte* contacts had occurred. We disagree. While the telephone call was clearly inconsequential, it appears from the record that States Land succeeded in transmitting influential documents without prior notice to opposing parties of either the fact of this communication or the matters discussed therein. Only a belated attempt to notify opposing counsel secured their presence at the September 12 meeting.

However, the occurrence of an *ex parte* contact does not mandate automatic reversal. The leading case in Illinois is *E & E Hauling v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555. Citing *PATCO v. Federal Labor Relations Authority* (D.C. Cir. 1982), 685 F.2d 547, the Second District adopted the following standard:

> "[A] court must consider whether, as a result of improper *ex parte* communications, the agency's decisionmaking process was irrevocably tainted so as to make the ultimate judgment of the agency unfair, either to an innocent party or to the public interest that the agency was obliged to protect. In making this determination, a number of considerations may be relevant: the gravity of the *ex parte* communications; whether the contacts may have influenced the agency's ultimate decision; whether the party making the improper contacts benefitted from the agency's ultimate decision; whether the contents of the communications were unknown to opposing parties, who therefore had no opportunity to respond; and whether vacation of the agency's decision and remand for new proceedings would serve a useful purpose." *PATCO v. Federal Labor Authority* (D.C. Cir. 1982), 685 F.2d 547, 564-65.

■ A weighing of all relevant factors indicates that the contacts in question do not justify reversal. While the contacts were not grave, at least in the sense of duration or that any novel arguments were set forth, they were clearly unknown to the other parties at the most critical relevant time. They also seemed to influence the agency's ultimate decision, which ran to States Land's benefit. However, there was at least some opportunity to respond, although hastily afforded. Given the closeness of the question, we are inevitably drawn to the final factor. The record reveals that it is doubtful that a useful purpose would be served by remand. The county board, both on its own

and through the hearing committee, was fully apprised of all relevant arguments. After going into executive session, the September 12 meeting produced a 20-7 majority in favor of deleting the conditions. There is little to suggest that the overwhelming support would be dissipated by further proceedings. Thus, we decline to reverse on procedural grounds.

■ Finally, the municipalities urge that the finding that the health, safety and welfare criterion was satisfied was against the manifest weight of the evidence. As the Pollution Control Board itself found, the argument that there was a danger to public water supplies from leachate migrating from the landfill was unfounded. Numerous highly qualified experts testified as to the hydrogeology of the proposed site. Although it is not abundantly clear from the record that such damage is impossible, it is clearly not against the manifest weight of the evidence to find that the water supply was adequately protected. Furthermore, the record reveals that the bases for the contentions of unfitness are questionable at best. The lay witnesses who testified as to the existence of buried railroad ties on the site were not particularly credible. The principal expert for the municipalities, Dr. Zimmerman, made only a brief visit to the site. No independent geological tests were taken. The record reveals that both States Land's and the county's independent experts were far better informed as to the potential health, safety and welfare aspects of the site. Accordingly, we affirm the Pollution Control Board's finding that the county board's decision on this criterion was not against the manifest weight of the evidence.

■ Finally, we agree with the municipalities that the Pollution Control Board should bear the expense of the report of the proceedings before its hearing officer. The relevant portion of the Environmental Protection Act mandates stenographic recording of proceedings before the Board. Since no specific statutory language places the burden of providing transcription on the seeker of review, the Board is without authority to refuse to pay for the transcript of the record of proceedings. *Zurek v. Cook County Police & Corrections Merit Board* (1976), 42 Ill. App. 3d 1044, 356 N.E.2d 1079.

Accordingly, we affirm the decision of the Pollution Control Board, but order the Board to reimburse the municipalities for the fee of the reporter.

Affirmed as modified.

SCOTT and STOUDER, JJ., concur.