WASTE MANAGEMENT OF ILLINOIS, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Second District No. 2—88—0212

Opinion filed November 7, 1988.—Rehearing denied December 8, 1988.

Pedersen & Houpt, of Chicago (Donald J. Moran, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, and Wayne Wiemerslage, of Illinois Environmental Protection Agency, both of Springfield, and Dorothy M. Gunn, of Pollution Control Board, of Chicago (Matthew J. Dunn, Joseph M. Claps, and Michelle D. Jordan, Assistant Attorneys General, of Chicago, of counsel), for respondent Pollution Control Board.

Fred L. Foreman, State's Attorney, of Waukegan (Michael Phillips and Mitchell Hoffman, Assistant State's Attorneys, of counsel), for respondent Lake County Board.

James P. Chapman and Alan Mills, both of James P. Chapman & Associates, Ltd., of Chicago, for amicus curiae William Alter.

JUSTICE REINHARD delivered the opinion of the court:

Petitioner, Waste Management of Illinois, Inc. (Waste Management), sought local siting approval from the Lake County Board (LCB) for an electric power generating, nonhazardous waste incinerator and associated landfill to be located in unincorporated Lake County. Following a hearing conducted pursuant to section 39.2(d) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(d)), the LCB denied Waste Management's request for siting approval. Waste Management appealed the LCB decision to

the Illinois Pollution Control Board (PCB) pursuant to section 40.1 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1), and the PCB affirmed the decision of the LCB. Following the PCB's denial of its motion to reconsider, Waste Management filed its petition for review with this court. Ill. Rev. Stat. 1985, ch. 111½, par. 1041.

The issues raised on appeal are: (1) whether the PCB erred in its determination that the LCB's decision as to criterion (i), as set forth in section 39.2 of the Act pertaining to the necessity of the proposed site, was not against the manifest weight of the evidence; (2) whether the PCB erred in failing to review the LCB's findings as to criteria (ii), (iii) and (vi) of section 39.2; and (3) whether the LCB conducted a fundamentally fair hearing of Waste Management's local siting request.

On November 7, 1986, Waste Management filed its local siting request with Lake County seeking approval for a nonhazardous waste incinerator and landfill. The local hearing committee, consisting of seven members of the LCB, commenced its hearing on February 5, 1987. Also present, in addition to various attorneys and witnesses, were Mr. John Koenen, a Lake County assistant State's Attorney representing Lake County and its department of planning, zoning, and environmental quality, and Mr. Larry M. Clark, a Lake County assistant State's Attorney representing the Lake County Joint Action Solid Waste Planning Agency (SWPA), an agency composed of elected officials from Lake County municipalities and Lake County.

On April 20, 1987, Waste Management filed a motion to disqualify LCB members F.T. "Mike" Graham, Bruce Hansen, Carol Calabresi, and Norman Geary based on their alleged bias, predisposition, and prejudgment of its application. Additionally, Waste Management filed a motion to disclose interest which sought to ascertain whether any LCB member was ever a member of any of the groups or organizations appearing before the LCB or if any member had ever donated or contributed any funds or property to such groups or organizations. Upon the recommendation of the local hearing committee, both motions were denied by the LCB as not being timely filed.

On April 30, 1987, the hearing committee voted to deny Waste Management's local siting approval application. The hearing committee found that Waste Management had satisfied criteria (iv) and (v) of section 39.2 of the Act, but that it failed to satisfy criteria (i), (ii), (iii), and (vi). As to criterion (i), the hearing committee found that Waste Management failed to meet its burden of demonstrating that "the facility is necessary to accommodate the waste needs of the area it is intended to serve."

On May 5, 1987, the planning and zoning committee of the LCB presented to the entire LCB the hearing committee's findings and a resolution denying the local siting application. The LCB denied the local siting application by a vote of 21 against, 0 in favor, and two abstentions. Prior to voting, all LCB members were asked if any prior statements made by them would influence their ability to render a fair and impartial decision based solely on the evidence. All LCB members answered no, except John Balen, who then abstained from voting on the application.

On June 1, 1987, Waste Management filed its petition with the PCB pursuant to section 40.1 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1). Waste Management contended in its petition that the LCB failed to conduct a fundamentally fair hearing and that the LCB decision as to criteria (i), (ii), (iii), and (vi) was against the manifest weight of the evidence.

On December 17, 1987, the PCB issued its order and opinion upholding the decision of the LCB. The PCB found LCB member Hansen to be disqualified based on his bias and LCB member Anderson to be disqualified based on *ex parte* contacts between Anderson and certain citizens. Additionally, the PCB determined that the LCB finding as to criterion (i) was not against the manifest weight of the evidence. The PCB also declined to review the LCB findings as to criteria (ii), (iii), and (vi) because it found its decision regarding criterion (i) to be dispositive of the case.

On appeal, Waste Management first contends that the PCB's determination that it failed to satisfy criterion (i) is erroneous for three reasons. First, it argues that the PCB failed to consider a report commissioned by the Lake County Joint Action Solid Waste Planning Agency (SWPA) that concluded unequivocally that there is a need for the proposed facility; failed to consider an Environmental Protection Agency report indicating that Lake County has less than three years of remaining landfill capacity; and failed to consider the testimony of Jeanne Becker in a previous siting hearing in another case before the LCB in which she acknowledged the need for such a facility. Second, it contends that the PCB erred in considering the waste disposal capacities existing outside of Lake County. Finally, it maintains that the PCB's ruling impedes the formulation of uniform and feasible standards for measuring waste disposal needs.

■ Section 39.2(a) of the Act sets forth the criteria which must be met for approval of a local siting application.

Section 39.2(a) states, in pertinent part:

"(a) The county board of the county or the governing body of

the municipality *** shall approve the site location suitability for such new regional pollution control facility only in accordance with the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows; and

(vii) if the facility will be treating, storing or disposing of hazardous waste, an emergency response plan exists for the facility which includes notification, containment and evacuation procedures to be used in case of an accidental release." Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).

All of the statutory criteria must be satisfied before a local board may approve a local siting application. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 442-43, 513 N.E.2d 592.) In this case, Waste Management applied for a nonhazardous site location; therefore, criterion (vii) is not applicable. Waste Management appealed the LCB's decision as to criteria (i), (ii), (iii), and (vi), and the PCB considered only criterion (i) in affirming the decision of the LCB. This court, therefore, need only address the PCB's decision as to criterion (i).

■■ In doing so, we must apply the manifest weight of the evidence standard. (*Waste Management*, 160 Ill. App. 3d at 441-42, 513 N.E.2d at 597.) The role of a reviewing court on administrative review is limited to a determination of whether the administrative agency's decision was contrary to the manifest weight of the evidence (*McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 100, 506 N.E.2d 372; *Fixmer v. Regional*

*Board of School Trustees* (1986), 146 Ill. App. 3d 660, 666, 497 N.E.2d 152), and, as such, a reviewing court should not reweigh conflicting testimony. *McHenry County Landfill,* 154 Ill. App. 3d at 100, 506 N.E.2d at 379; *Fixmer,* 146 Ill. App. 3d at 666, 497 N.E.2d at 156-57.

▪ Section 39.2(a)(i) requires that the petitioner establish that the site location is necessary for the area to be served. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(i); *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 1083-84, 463 N.E.2d 969.) Although a petitioner need not show absolute necessity, it must demonstrate an urgent need for the new facility as well as the reasonable convenience of establishing a new or expanding an existing landfill. (*Waste Management,* 123 Ill. App. 3d at 1084, 463 N.E.2d at 976.) The petition must show that the landfill is reasonably required by the waste needs of the area, including consideration of its waste production and disposal capabilities. *Waste Management,* 123 Ill. App. 3d at 1084, 463 N.E.2d at 976.

Waste Management's principal witness at the local hearing was Mr. Richard W. Eldredge, a registered professional engineer. According to Eldredge, there are three active waste landfills in Lake County as well as several landfills in adjacent counties and Wisconsin. Eldredge testified that there is no current need for additional landfills, but that there will be additional need by 1996. He opined that the proposed facility is needed to meet the waste needs in Lake County.

On cross-examination, Eldredge admitted that he did not consider a landfill in Wisconsin in his opinion and that such landfill would decrease the need for waste disposal in Lake County. He also stated on direct examination that this waste disposal facility is located within 15 miles of the northern one-third of Lake County. Further, he stated there are several other landfills just outside of Lake County that have a potential to serve portions of Lake County, but he did not consider those in formulating his opinion as to need.

Mr. Robert Luedtke, chairman of SWPA, testified that the Lake County Soil Waste Management Plan Feasibility Study (SWAC Study) indicates that Lake County's landfills will not be filled until 1994 to 1997 and that SWPA is currently planning a waste disposal system to become operational by 1993.

Ms. Jeanne Becker, a consultant to SWPA, testified that there is no need for the proposed facility based upon the capacity of existing waste disposal sites within Lake County. She also testified that an existing landfill in Wisconsin which currently receives a portion of Lake County's waste and a proposed Cook County facility also would con-

tribute to lowering Lake County's needs. Becker also opined that Eldredge underestimated the disposal capacity within Lake County. She also testified that if available waste disposal sites in Lake County are considered, there will be sufficient waste disposal capacity through 1996 or 1997 if no new in-county facilities are constructed. Lastly, she noted that the SWAC study, relied on in part by Waste Management, is outdated because of the development of a nearby waste disposal facility in Wisconsin.

In determining whether the decision of the PCB as to criterion (i) is against the manifest weight of the evidence, this court must first decide whether it is proper to consider waste disposal facilities outside of Lake County in assessing the disposal needs of Lake County. On this point, Waste Management argues that case law does not require an applicant to go beyond the intended service area in determining disposal capacities, citing *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 463 N.E.2d 969, and *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639, 461 N.E.2d 542.

■ Neither case relied on by Waste Management stands for the proposition that facilities outside of the county intended to be served by the proposed facility cannot be considered in assessing the needs of the county. Rather, those cases hold that the petitioner must show that the proposed site is reasonably required by the waste needs of the area, including consideration of its waste production and disposal capacities as well as any other relevant factors. (*Waste Management*, 122 Ill. App. 3d at 645, 461 N.E.2d at 546.) Furthermore, criterion (i) requires that the facility be "necessary to accommodate the waste needs of the area it is intended to serve." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(i).) It is not improper to consider facilities outside of the intended service area if those facilities are presently providing waste disposal to the county. Neither would it be inappropriate to consider proposed facilities, whether in or out of the county, if such facilities will be capable of handling a portion of the waste disposal needs of the county and will be capable of doing so prior to the projected expiration of current disposal capabilities within the county such that the needs of the county will continue to be served.

■ In the present case, the LCB heard testimony of and considered the existence of landfills outside of Lake County which are presently satisfying a portion of the waste disposal needs of the county and the proposed development of an additional site in Bartlett in Cook County. Waste Management's expert, Eldredge, stated a good rule of thumb is that waste disposal sites should be located within a

15-mile radius of the service area. The Wisconsin site is within 15 miles of the northern one-third of Lake County. Consequently, it was not improper for the LCB to have considered that facility in its assessment of waste disposal needs in Lake County.

■ The PCB decision in this case is not against the manifest weight of the evidence. Becker testified that considering the disposal capacities in Lake County, there would not be a need for additional disposal facilities until at least 1996 or 1997. She also stated that the present Wisconsin facility and proposed Cook County facility would lower Lake County's disposal needs. Furthermore, Luedtke testified that SWPA is planning a waste disposal system which will become operational by 1993. Moreover, Becker testified that the SWAC study, which indicated a need for an additional waste disposal facility, was outdated. Also, Waste Management's expert, Eldredge, conceded on cross-examination that he did not consider the Wisconsin landfill in his assessment of need and that there are several other landfills just outside of Lake County that could provide additional disposal capacity. Finally, the Environmental Protection Agency report relied on by Waste Management was not allowed into evidence. Based on the evidence in the record, the PCB's determination that Waste Management did not sustain its burden of satisfying criterion (i) is not against the manifest weight of the evidence.

■ Finally, Waste Management argues that the PCB's determination of no need in this case where there exists nine years' capacity is inconsistent with this court's decision in *E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664, where this court found need had been established where there was disposal capacity for nine years. Contrary to Waste Management's interpretation, the decision in *E & E Hauling* that a need did exist did not depend entirely upon the life expectancy of the then existing waste disposal facilities. Rather, the court also considered the fact that no other facilities were permitted or about to be opened in the intended service area. (*E & E Hauling*, 116 Ill. App. 3d at 608-09, 451 N.E.2d at 572-73.) In this case, the LCB considered evidence of the proposed new facility as well as the existence of nearby facilities outside of Lake County in deciding that there is no need within the meaning of criterion (i). Neither the Act nor case law suggests that need be determined by application of an arbitrary standard of life expectancy of existing disposal capacities. The better approach is to provide for consideration of other relevant factors such as future development of other disposal sites, projected changes in amounts of refuse generation within the

service area, and expansion of current facilities.

Waste Management next contends that the PCB erred in failing to consider criteria (ii), (iii), and (vi) after affirming the LCB on criterion (i). The PCB responds that it is acting in a quasi-judicial role when reviewing decisions of the LCB and that it should not be required to review all challenged criteria if it affirms on any one of the criteria, because to do so is judicially uneconomical.

A local county board is required to consider evidence on each of the criteria set forth in section 39.2 (see Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)), and each and every one of the six criteria must be satisfied before a local siting application may be approved. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 443, 513 N.E.2d 592.) Section 40.1 further provides that the PCB, in hearing an appeal from a decision of the county board, shall "include in its consideration the written decision and reasons for the decision of the county board." Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1.

The PCB is a statutorily created agency designed to provide expertise in the consideration of whether a proposed waste disposal site is appropriate in a particular situation. (Ill. Rev. Stat. 1985, ch. 111½, par. 1005; *Waste Management*, 122 Ill. App. 3d at 645, 461 N.E.2d at 547.) If the PCB affirms a decision of a county board based on one criterion but does not consider any other challenged criterion, upon review in the appellate court, the appellate court, if it reverses the PCB's decision as to the one criterion, would be required to remand back to the PCB for consideration of the remaining criteria. (See *Waste Management*, 122 Ill. App. 3d at 645, 461 N.E.2d at 547.) To do otherwise would be to deny the parties, and the reviewing court, the benefit of the PCB's expertise. (*Waste Management*, 122 Ill. App. 3d at 645, 461 N.E.2d at 547.) Nevertheless, this remandment procedure would extend the review process and promote multiple appeals.

█ █ Furthermore, although the Act does not specifically require the PCB to review each of the challenged criteria in the event it can affirm on any one of the criteria, we believe the statutory duty to review the decision and reasons for the decision of the county board pursuant to section 40.1 requires the PCB to review and to decide whether all the challenged findings of the county board are against the manifest weight of the evidence. It is clearly more efficient for the PCB to conduct a complete review of all challenged criteria, thereby presenting a complete record in the event of an appeal. Because the appellate court must have the benefit of the PCB's expert consideration of each criterion before reviewing its decision (see

*Waste Management*, 122 Ill. App. 3d at 645, 461 N.E.2d at 547), the failure of the PCB to review each criterion will result in a remand to the PCB if the appellate court reverses the PCB. The PCB admits in this case that if we reverse as to criterion (i), "this court should remand the case back to the PCB for initial review of the record on criteria 2, 3 and 6." As a matter of judicial economy and efficiency, and in light of the PCB's role as an administrative body possessing expertise in this area, we believe the PCB has a statutory obligation under section 40.1 to conduct a complete review of all challenged statutory criteria under the Act in its initial review of an appeal from the decision of a local board. Because we affirm the PCB's decision as to criterion (i), in this case we need not remand for consideration of the remaining criteria. Waste Management is not prejudiced in this circumstance by the failure of the PCB to review all criteria acted on by the LCB.

Waste Management's final contention raises numerous arguments regarding the fundamental fairness of the local siting application process. First, it argues that the Lake County ordinance, which establishes procedures for conducting a local siting hearing, violates section 39.2 of the Act because the siting procedures in section 39.2 are the exclusive procedures to be followed. Subsection 39.2(g) of the Act provides:

> "The siting approval, procedures, criteria and appeal procedures provided for in this Act for new regional pollution control facilities shall be the exclusive siting procedures and rules and appeal procedures for such facilities. Local zoning or other local land use requirements shall not be applicable to such siting decisions." (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(g).)

Subsection 40.1(a) states in pertinent part:

> "In making its orders and determinations under this Section, the Board shall include in its consideration the written decision and reasons for the decision of the county board or the governing body of the municipality, the transcribed record of the hearing held pursuant to subsection (d) of Section 39.2, and the fundamental fairness of the procedures used by the county board or the governing body of the municipality in reaching its decision." Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a).

■■ There are no Illinois cases addressing this issue. Although section 39.2(g) clearly states that the procedures provided for in the Act "shall be the exclusive siting procedures," that section must be read together with section 40.1(a), which requires consideration of the fundamental fairness of any procedures used by a county board in

reaching its decision. These two sections may be read consistently. The Act does not provide specific procedures for conducting the local hearing itself. It does establish procedures for the application process and for standards which must be applied. The language of section 40.1(a) recognizes that specific procedures as to the conduct of the local hearings may be established by a county board and also requires that those procedures be fundamentally fair. Thus, the Act does not prohibit a county board from establishing its own rules and procedures governing conduct of a local siting hearing so long as those rules and procedures are not inconsistent with the Act and are fundamentally fair.

Alternatively, Waste Management contends that even if the Lake County ordinance is not prohibited by the Act, it is unconstitutional on its face because it violates procedural due process. Specifically, it argues that provisions of the ordinance which deny an applicant the opportunity to amend or supplement its application after filing, and which do not allow submission of additional documentary evidence in response to evidence submitted by the county or any objectors, denies it the opportunity to rebut and to effectively cross-examine witnesses. It further maintains that the ordinance allows objectors and the county adequate time and opportunity to respond while denying an applicant the same opportunity. Finally, it argues that the ordinance fails to provide standards by which the county board will evaluate the application.

Administrative proceedings are governed by the fundamental principles and requirements of due process of law. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 51, 416 N.E.2d 1082.) Due process is a flexible concept and requires such procedural protections as the particular situation demands. (*Scott*, 84 Ill. 2d at 51, 416 N.E.2d at 1087.) In an administrative hearing, due process is satisfied by procedures that are suitable for the nature of the determination to be made and that conform to the fundamental principles of justice. (*Telcser v. Holzman* (1964), 31 Ill. 2d 332, 339, 201 N.E.2d 370; *Desai v. Metropolitan Sanitary District* (1984), 125 Ill. App. 3d 1031, 1033, 466 N.E.2d 1045.) Furthermore, not all accepted requirements of due process in the trial of a case are necessary at an administrative hearing. (*Fox River Valley District Council of Carpenters v. Board of Education* (1978), 57 Ill. App. 3d 345, 349, 373 N.E.2d 60.) Due process requires that parties have an opportunity to cross-examine witnesses (*North Shore Sanitary District v. Pollution Control Board* (1972), 2 Ill. App. 3d 797, 801, 277 N.E.2d 754), but such requirement is not without limits. (See *Fox River Valley*

*Carpenters,* 57 Ill. App. 3d at 349, 373 N.E.2d at 63.) Due process requirements are determined by balancing the weight of the individual's interest against society's interest in effective and efficient governmental operation. *Scott,* 84 Ill. 2d at 51, 416 N.E.2d at 1087.

In the present case, the ordinance requires an applicant to submit all documentary and written materials relevant to the application process at the time of the filing of the application. This is done to fairly apprise the county and any possible objectors of the basis of the application and to allow adequate time for a response. This is consistent with the Act. (See Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(c).) The ordinance allows the applicant to cross-examine witnesses using any of the documentary and written materials submitted with the application. Additionally, an applicant may rebut through sworn testimony or admission of any written material submitted with the application. The only limitation placed on the applicant is that it is not allowed to introduce written material beyond that originally submitted with its application to impeach or rebut the testimony of any witness. Such a rule is consistent with the policy of apprising the county and the objectors of the evidence relied on by the applicant and also eliminates potential delays in the adjudicatory process. If an applicant has submitted all existing relevant materials with its application, then the written materials and documents necessary to impeach or rebut will already be part of the record. If a particular document is not in existence at the time the application is submitted, the applicant is free to withdraw its application at least 14 days prior to the first scheduled hearing and may file a new application.

Although procedural due process requires an opportunity to cross-examine and offer rebuttal evidence, the requirement in the ordinance here that such cross-examination and rebuttal be limited to documentary evidence already in the record and to any sworn testimony serves the purpose of promoting an effective and efficient process of considering local siting applications. Balanced against the minimal limitation of an applicant's ability to cross-examine and rebut, it cannot be said that the ordinance on its face denies Waste Management procedural due process.

Finally, Waste Management's contention that the ordinance denies it due process because it fails to set forth the standards by which its application will be judged is meritless. The ordinance expressly adopts the criteria set forth in section 39.2. As such, an applicant is made aware of the standards which will be applied to its application and is not denied due process in that regard.

Waste Management next contends that the county board's applica-

tion of the ordinance concerning certain evidentiary rulings denied it procedural due process. All of the evidence asserted to be objectionable, except the testimony of Becker, relates to criteria other than criterion (i). Because Waste Management only challenges the decision of the PCB as to criterion (i), we need not consider the remaining evidentiary rulings challenged by Waste Management in its brief.

As to the challenged admission of Becker's testimony, Waste Management argues that it was not allowed to introduce evidence not submitted with its application even though the hearing officer allowed Becker to testify in response to another witness' testimony. Pursuant to the ordinance, any evidence, other than testimony offered by any party other than the applicant, must be submitted at least 10 days before the public hearing. Here, Becker testified about a site-specific report, and the hearing officer allowed certain exhibits upon which her testimony was based to be admitted into evidence. Although Waste Management does not clearly articulate its contention in its brief, it appears to be challenging both the admission of the exhibits and the testimony based upon them.

The hearing officer, in allowing Becker to testify and admitting documents upon which her testimony was based, violated the express language of the ordinance. The exhibits were not submitted in accordance with the "10 day rule" and were apparently prepared in response to another witness' testimony. Even though it was error to allow Becker to testify regarding the exhibits or to admit the exhibits, Waste Management fails to articulate how this one error resulted in a prejudicial determination by the county board. Considering the extensive amount of testimony and evidence as to criterion (i), we find the error here to be harmless. See *Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 414, 476 N.E.2d 1232.

Waste Management next contends that the local hearings were fundamentally unfair because Lake County appeared as an objector, because the attorney for the hearing committee replaced the original hearing officer on March 26, 1987, and because a Lake County assistant State's Attorney represented an objector, SWPA.

As the PCB correctly notes, no objection was made to the appearance of either Assistant State's Attorney Koenen on behalf of Lake County or Assistant State's Attorney Clark on behalf of SWPA. We, therefore, find that Waste Management's challenge to the appearance of the Lake County assistant State's Attorneys is waived. See *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38, 481 N.E.2d 664; *A.R.F. Landfill, Inc. v. Pollution Control Board* (1988), 174 Ill. App. 3d 82, 89, 528 N.E.2d 390, 394.

■■■ Even assuming no waiver, the participation of the two assistant State's Attorneys in these circumstances did not render the hearing fundamentally unfair. It is proper to have some blend of judicial and prosecutorial function in an administrative proceeding provided that the person performing the quasi-prosecutorial function is not a member of the decision-making body. (*Landenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 96, 394 N.E.2d 770.) In this case, one assistant State's Attorney appeared for Lake County, which was not an objector, and the other appeared on behalf of an objector, SWPA, an agency consisting of elected officials from Lake County municipalities and Lake County, other than county board members. Neither attorney acted in an advisory capacity for the LCB or in any way participated in the ultimate decision-making process of the LCB. Thus, their participation did not result in a fundamentally unfair hearing.

As to Waste Management's argument that the substitution of the hearing committee's attorney as the hearing officer resulted in a fundamentally unfair hearing, such argument is without merit. All parties, including Waste Management, signed a written stipulation agreeing to the substitution. Therefore, Waste Management cannot now challenge the substitution as being unfair.

Waste Management next contends that seven members of the LCB were biased and prejudiced and should have been disqualified from hearing its application. Specifically, it argues that LCB member Graham had a personal interest in the outcome of the hearing because he is the supervisor of Libertyville Township, in which the proposed landfill would be located and which was an objector. Additionally, it asserts that LCB members Graham, Beyer, Geary, Moore, Reindl, Anderson, and Calabresi demonstrated bias and prejudice by various statements they made which were reported in the local media as well as by a letter to residents in the area of the proposed landfill which was sent by Beyer, Reindl, and Anderson. It also argues that Moore demonstrated bias and prejudice by sending letters to objectors expressing her sympathy to their position.

■■■ The record indicates that Waste Management filed a motion to disqualify only LCB members Graham, Hansen, Calabresi, and Geary. Generally, a failure to object at the original proceeding constitutes a waiver of the right to raise an issue on appeal. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38, 481 N.E.2d 664.) Moreover, a claim of bias or prejudice on the part of a member of an administrative agency or the judiciary must be asserted promptly after knowledge of the alleged disqualification. (107 Ill. 2d

at 38, 481 N.E.2d at 666.) This is so because it would be improper to allow a party to withhold a claim of bias until it obtains an unfavorable ruling. 107 Ill. 2d at 38-39, 481 N.E.2d at 666.

 Waste Management's motion to disqualify only contained allegations as to LCB members Graham, Hansen, Calabresi, and Geary. The record does not indicate any other allegations of bias and prejudice as to any other LCB members prior to Waste Management's raising the issue before the PCB. Therefore, we find that, as to LCB members Beyer, Moore, Reindl, and Anderson, Waste Management has waived any claim of bias and prejudice.

 We, therefore, only address Waste Management's contention of bias and prejudice as to LCB members Graham, Calabresi and Geary. LCB member Hansen was subsequently found to be biased by the PCB, and, at this point, we do not address the consequences of that finding. There is a presumption that administrative officials are objective and capable of fairly judging a particular controversy. (*Citizens for a Better Environment v. Pollution Control Board* (1987), 152 Ill. App. 3d 105, 111-12, 504 N.E.2d 166; see *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 55, 416 N.E.2d 1082; *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 320, 388 N.E.2d 398.) Moreover, the fact that an administrative official has taken a public position or expressed strong views on an issue before the administrative agency does not overcome the presumption. (*Citizens for a Better Environment*, 152 Ill. App. 3d at 112, 504 N.E.2d at 171.) Where, as here, the administrative agency operates in an adjudicatory capacity, bias or prejudice may only be shown if a disinterested observer might conclude that the administrative body, or its members, had in some measure adjudged the facts as well as the law of the case in advance of hearing it. *E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 598, 451 N.E.2d 555, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.

We address, first, Waste Management's contention that LCB member Graham should have been disqualified because he had a personal interest in the outcome of the application process. Specifically, Waste Management argues that, because of his position as supervisor of Libertyville Township and because of certain statements he made in opposition to landfills, Graham had a personal interest in the outcome of the application process.

 No person may play a decision-making role in a judicial or administrative proceeding in which he or she has a personal interest. (*Board of Education v. Regional Board of School Trustees* (1984), 127 Ill. App. 3d 210, 213, 468 N.E.2d 1247.) A personal interest need not

be pecuniary; rather, it is any interest which can be viewed as having a potentially debilitating effect on the impartiality of the decision maker. (*Board of Education*, 127 Ill. App. 3d at 213, 468 N.E.2d at 1249.) Here, Graham did not have a personal interest such that he should have been disqualified from voting on Waste Management's application based merely on his status as township supervisor. There is nothing in the record to indicate that Graham participated in or promoted the objection to the application submitted by Libertyville Township. Thus, there is no evidence of a disqualifying conflict of interest in that regard.

■■■ Additionally, Waste Management relies on certain statements made by Graham at various meetings in arguing that he had a personal interest in the outcome of the application process. Several of these statements are contained in newspaper articles and, as they are unsupported by other evidence to verify them, are inadmissible to establish personal interest. (*A.R.F. Landfill, Inc.*, 174 Ill. App. 3d at 89, 528 N.E.2d at 395.) As to other statements admitted by Graham or verified in an affidavit of a third party in attendance at the meetings, such statements are merely public expressions of his views on landfills and cannot be reasonably construed as indicating a personal interest. Consequently, we hold that on this record LCB member Graham did not have a disqualifying interest in the outcome of the application process.

Finally, as to Graham, Waste Management contends that he was biased and prejudiced because of certain statements made by him contained in his response to its request for admission of facts and based upon testimony of various LCB members regarding his opposition to landfills. Upon examining these statements, it is clear they are expressions of opposition by Graham, but do not demonstrate that he prejudged the facts and law as to Waste Management's application.

As to LCB member Calabresi, Waste Management argues that, because of statements made by her at several meetings and her testimony before the PCB, she was biased and prejudiced and should have been disqualified from voting on its application. These statements and testimony indicate that Calabresi favors recycling over landfills as a method of waste disposal. Although such statements indicate her views on waste disposal, they do not demonstrate a prejudgment of the facts and law and are not a sufficient basis to disqualify her in this case.

Finally, regarding LCB member Geary, Waste Management contends that statements by him that an incinerator and landfill would be detrimental to parts of Lake County demonstrate a disqualifying bias.

Again, these statements, albeit strong expressions of Geary's views on landfills, do not constitute a prejudgment of the facts and law and, therefore, do not disqualify LCB member Geary.

Waste Management also contends that "[t]he PCB erred in refusing to declare the denial of petitioner's application void because of the participation of a County Board member with a personal interest in the proceedings." In this regard, it argues that the "participation of Mr. Graham alone" contaminated the proceedings because of his position as Libertyville Township supervisor. Because of our holding that Graham did not have a disqualifying personal interest in the outcome of the application process, we need not consider this contention further.

Waste Management does not argue that LCB member Hansen's bias and prejudice, as determined by the PCB, alone is sufficient to render the LCB decision to deny its application void. We, therefore, are not required to consider whether his bias would prejudice the entire board.

Waste Management next contends that the local hearing was fundamentally unfair because of certain *ex parte* contacts with members of the LCB. Specifically, it states that 10 LCB members received a petition, various letters, personal contacts, and telephone calls from constituents expressing opposition to its landfill application. Additionally, two LCB members received threatening telephone calls related to the landfill application. Thus, it argues that these constitute improper *ex parte* contacts which tainted the application proceedings. The PCB responds, in part, that the various telephone calls, personal contacts and letters do not constitute *ex parte* contacts.

Initially, we address the question of whether these various communications, which occurred outside the hearings and the presence of Waste Management, constituted *ex parte* contacts. Black's Law Dictionary defines *ex parte* as something "done for, in behalf of, or on the application of, one party only." (Black's Law Dictionary 517 (5th ed. 1979).) Furthermore, *ex parte* proceedings are proceedings brought for the benefit of one party only and without notice to the other party. (*Gallagher v. Swiatek* (1982), 106 Ill. App. 3d 417, 420, 435 N.E.2d 1287; *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 185, 405 N.E.2d 1322.) Because the various communications between citizens of Lake County and certain LCB members were outside the presence of Waste Management and were clearly in support of the position held by various objectors who were parties to the application proceeding, they were *ex parte* contacts.

The PCB, however, relies on *Town of Ottawa v. Pollution Control Board* (1984), 129 Ill. App. 3d 121, 472 N.E.2d 150, in arguing that these communications were not *ex parte* contacts because they did not occur between LCB members and any party to the proceedings. Such reliance is misplaced. While the court in *Town of Ottawa* stated that "[a]n *ex parte* contact is one which takes place without notice and outside the record between one in a decision-making role and a party before it," we find such definition to be inclusive rather than exclusive. (*Town of Ottawa*, 129 Ill. App. 3d at 126, 472 N.E.2d at 154.) Indeed, a communication between a party and an adjudicator outside the presence of the other party is clearly *ex parte*, but is not the only possible form of *ex parte* contact. Thus, we do not believe that the language in *Town of Ottawa* limits the definition of *ex parte* contacts as urged by the PCB.

■■■ A court will not reverse an agency's decision because of *ex parte* contacts with members of that agency absent a showing that prejudice to the complaining party resulted from these contacts. (*E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 607, 451 N.E.2d 555, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664.) Here, the record does not indicate that Waste Management suffered any prejudice as a result of the contacts between citizens of Lake County and LCB members. The various telephone calls, letters, and personal contacts were merely expressions of public sentiment to county board members on the issue of Waste Management's landfill application. Moreover, existence of strong public opposition does not render a hearing fundamentally unfair where, as here, the hearing committee provides a full and complete opportunity for the applicant to offer evidence and support its application. (*Waste Management*, 123 Ill. App. 3d at 1081, 463 N.E.2d at 974.) Further, *ex parte* communications from the public to their elected representatives are perhaps inevitable given a county board member's perceived legislative position, albeit in these circumstances, they act in an adjudicative role as well. Thus, although personal *ex parte* communications to county board members in their adjudicative role are improper, there must be a showing that the complaining party suffered prejudice from these contacts. (*E & E Hauling, Inc.*, 116 Ill. App. 3d at 606-07, 451 N.E.2d at 571; see also *Town of Ottawa*, 129 Ill. App. 3d at 126-27, 472 N.E.2d at 154.) There is no showing of prejudice here, particularly in light of the extensive record developed during the local hearing. Accordingly, there is no basis to reverse the decision of the PCB on this issue.

Waste Management next contends that the LCB did not have ade-

quate time or reasonable opportunity to consider the record before its May 5, 1987, vote on the Waste Management application. This court has held that fundamental fairness in this context does not require the full county board to debate the hearing committee's recommendation so long as the record is made available for review by the entire county board. (*Waste Management*, 123 Ill. App. 3d at 1080-81, 463 N.E.2d at 974.) The only statutory requirement concerning the decision of the county board is that its decision be in writing and specify the reason for the decision. Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(e); *Waste Management*, 123 Ill. App. 3d at 1081, 463 N.E.2d at 974.

 In this case there was testimony before the PCB that LCB members received transcripts of the local siting hearings "between a few days and a week" after each session. Another board member testified that transcripts of the local hearings were "routinely made available within a couple of days after the hearing date." Furthermore, another LCB member stated that the board received evidence summaries and briefs about a week prior to the full LCB hearing. There was also testimony that the LCB received the recommendation of the county planning and zoning committee approximately five or six days before the May 5, 1987, hearing. Waste Management offered no evidence to rebut this testimony. Based on this undisputed evidence that the record was made available to the LCB prior to its final vote on May 5, 1987, Waste Management has failed to demonstrate any lack of fundamental fairness in this regard.

As to its claim that it was denied fundamental fairness because the LCB members were fatigued from a 25-hour session and only spent a short time discussing the Waste Management application prior to voting, there is no requirement that the LCB conduct any debate as long as they have had an opportunity to review the record prior to voting. (*Waste Management*, 123 Ill. App. 3d at 1081, 463 N.E.2d at 974.) Thus, this argument is without merit.

For the foregoing reasons, we affirm the decision of the PCB.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.