HILLSIDE STONE CORPORATION, Petitioner, *v.* THE POLLUTION
CONTROL BOARD *et al.*, Respondents.

First District (1st Division)   No. 63182

Opinion filed October 18, 1976.

Richard F. McPartlin and Henry McGurren, both of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Jeffrey S. Herden, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Hillside Stone Corporation (Hillside) has petitioned for review of an opinion and order of The Illinois Pollution Control Board (Board) which, after a hearing on a complaint by The Illinois Environmental Protection Agency (EPA), found Hillside to be operating in violation of section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1009(a)) and Rule 102 of the Air Regulations, fined Hillside $10,000, ordered Hillside to cease and desist from operating existing equipment without properly maintained pollution control devices, and ordered Hillside to file a "corporate approved plan" to effect compliance with section 9(a) of the Environmental Protection Act and Rule 102 of the Air Regulations. Hillside contends: (1) the opinion and order of the Board are erroneous for failure to comply with section 33 of the Act and Illinois Pollution Control Board Procedural Rule 332(a); (2) the finding of the Board that Hillside violated section 9(a) and Rule 102 is against the manifest weight of the evidence; (3) the $10,000 fine is improper; and (4) the order to submit a corporate approved compliance plan is improper.

Hillside owns and operates a limestone quarry in Cook County, Illinois. During its operation a white dust is emitted. The EPA claimed Hillside allowed this dust to be blown by the wind into the neighboring residential community. Several of the residents in the area testified that dust covered their property, affected their eyes and breathing and that the dust was from Hillside's quarry because they could see it being blown from there onto their property. Hillside claimed the bulk of the dust in the residential area was from the limestone gravel alleys behind the residents' homes. Hillside also contended it had a pollution control program in operation, had expended $600,000 to suppress the dust and that it had taken all the dust control steps that were technologically available. The EPA recognized that Hillside had installed a dust suppressant system, but claimed the system was not working properly because of improper maintenance. The EPA also argued that there were several additional steps which Hillside could have taken that would have substantially reduced the air pollution caused by the dust emissions.

By section 3(b) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1003(b)), the legislature has created two categories of air pollution. (*Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 295, 319 N.E.2d 794, 796, 797.) The first is that which is "injurious

to human, plant, or animal life, to health or to property." The second, the one involved here, is air pollution which "unreasonably interfere[s] with the enjoyment of life or property."[1] Section 33(a) of the Act requires the Board to "file and publish a written opinion stating the facts and reasons leading to its decision." (Ill. Rev. Stat. 1975, ch. 111½, par. 1033(a).) Section 33(c) of the Act sets the criteria for determining whether there is an unreasonable interference with the enjoyment of life or property. These criteria must be considered by the Board before a finding can be made that air pollution of the second category exists and the Board's opinion must show that the 33(c) factors were considered as part of the facts and reasons leading to its decision. *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 296, 319 N.E.2d 794, 797.

"* * * The requirement of section 33(a) that the opinion must set forth the facts and reasons for the decision serves to insure that the necessary considerations were given, and enables the court to fully and completely review the determinations made by the Board, and provides those affected by the Act with certain additional guidelines for their conduct. [Citations.]" *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 336, 328 N.E.2d 5, 8.

Hillside's first contention is that the Board did not comply with section 33(c) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1033(c)) and the Board's procedural rule 332. Section 33(c) provides:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

Rule 332 provides:

"332. *Contents of Orders and Opinions.*

The Board shall prepare a written order and opinion for all final determinations made which shall include:

---

[1] Although the EPA's complaint charged Hillside with causing both types of air pollution, the Board's opinion and order makes a finding solely on the second type.

(a) Findings (with specific page references to principal supporting items of evidence in the record), and conclusions as well as the reasons or basis therefor, upon all the material issues."

■■ We have examined the record and are satisfied that sufficient evidence was presented to the Board on each of the 33(c) factors. It is also apparent from the Board's opinion that these factors were given proper consideration by it in deciding whether Hillside violated the Act and Regulation.

Concerning the interference with property (section 33(c)(i)), the opinion states that 11 residents of the area testified about the dust and its interference with their outdoor activities, the drying of their mucous membranes and its covering of their houses, cars, grass and shrubbery. With reference to the social and economic value of the pollution source (section 33(c)(ii)), the opinion notes that Hillside produces 4,500 tons of various sized limestone a day, but the Board was unable to give further consideration to this section because Hillside refused to provide information with respect to the economic value of its quarry. As to the suitability of Hillside's plant to its location (section 33(c)(iii)), the opinion sets out that the area involved was primarily residential, although zoned commercial. In regard to the factor of technical feasibility of reducing or eliminating the emissions (section 33(c)(iv)), the opinion sets forth the steps Hillside had taken to abate the dust and the amount of money Hillside had spent on the problem. It further noted steps Hillside should have taken and the fact that Hillside, considering the size of its operation, should be expected to take these further steps and properly to use and maintain the dust suppressant system it had already installed. Although the Board's opinion could have been more detailed, it shows a proper consideration by the Board of the section 33(c) criteria and of Rule 332. *Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 351 N.E.2d 865.

Hillside's second contention is that the finding of the Board that Hillside violated Section 9(a) of the Environmental Protection Act and Rule 102 of the Air Regulations is against the manifest weight of the evidence.

Section 9(a) of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1009(a)) provides:

"No person shall:

(a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act; * * * "

Rule 102 provides:

"No person shall cause or threaten or allow the discharge or

emission of any contaminant into the environment in any State so as, either alone or in combination with contaminants from other sources, to cause or tend to cause air pollution in Illinois, or so as to violate the provisions of this Chapter, or so as to prevent the attainment or maintenance of any applicable ambient air quality standard."

As provided in section 11 of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 274), "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." The reviewing court may not overturn the decision of the Board unless the decision is found to be against the manifest weight of the evidence. *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 313 N.E.2d 161.

■■ The Board's opinion, with appropriate references to the record, stated both in summary and in some detail the testimony of the residents of the area who described how the dust coming from the Hillside quarry seriously interfered with their daily living. The testimony of private citizens, as opposed to that of experts, is sufficient to sustain a finding that there was a violation of the Act. (*Sangamo Construction Co. v. Pollution Control Board* (1975), 27 Ill. App. 3d 949, 955, 328 N.E.2d 571, 574; *Marblehead Lime Co. v. Pollution Control Board* (1976), 42 Ill. App. 3d 116, 355 N.E.2d 607.) After the Board had determined that Hillside was emitting pollutants into the air, it made the further finding that the emissions were unreasonable in light of the 33(c) factors, with special reference to the practicability and reasonableness of reducing the emissions.

■■ Hillside contends there was no evidence that the residents "were deprived of the possession, use or occupancy of their property." But this implies a higher burden of proof than that which the EPA actually had. Under section 3(b) of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1003(b)) there need only be a showing of unreasonable interference with the enjoyment of life or property. The term "unreasonable interference" does not require proof by the EPA with respect to each of the criteria listed in section 33(c). (*Processing & Books, Inc. v. Pollution Control Board* (1976), 64 Ill. 2d 68, 75-77, 351 N.E.2d 865, 868-869; *Marblehead Lime Co. v. Pollution Control Board* (1976), 42 Ill. App. 3d 116, 355 N.E.2d 607; Ill. Rev. Stat. 1973, ch. 111½, par. 1033(c).) The term, as used in section 3(b), was intended to introduce into the statute the objective quality of the common law and refers to "a substantial interference with the enjoyment of life and property." (*Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 319 N.E.2d 794; *Marblehead Lime Co. v. Pollution Control Board* (1976), 42 Ill. App. 3d 116, 355 N.E.2d 607.) There is ample evidence in the record to support the finding that Hillside's emissions

substantially interfered with the nearby residents' enjoyment of life and property. Hillside's argument would permit the doing of anything short of actually forcing people from their property. Clearly, no such standard was intended by the legislature.

■■ Hillside's third contention is that the $10,000 fine imposed by the Board was punitive and excessive. We agree. The record shows that Hillside has taken substantial steps to reduce the dust. It has spent $600,000 on pollution control and the Board's opinion so recognizes. As a result of the Board's order, it will be required to expend further sums to the same end. Hillside has already paid a $10,000 fine as a result of a suit by the Cook County Department of Environmental Control and has also cooperated with the United States Environmental Protection Agency. The Board's opinion does not explain the relationship between the amount of the fine and the seriousness of the violation. It is not apparent that the section 33(c) criteria were considered in relation to the fine as required. (See *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 207-209, 326 N.E.2d 406, 407-409.) From our consideration of the entire record, we believe a fine of $2,000 is adequate to aid enforcement of the Act and as a warning to Hillside of the necessity properly to maintain its equipment and to avoid delay in the filing of a corporate approved plan for compliance.

■■ Hillside's final contention is that the Board's order that Hillside file a corporate approved plan to effect compliance with the Act and Regulations is vague, arbitrary, unreasonable and unnecessary. We disagree. The opinion of the Board clearly states the further steps Hillside should take to bring its operations into compliance. The submission of the corporation's plan to carry out these steps would presumably involve only a nominal cost and we find nothing arbitrary or unreasonable in the requirement that it should be filed.

The Board's order is modified to reduce the fine imposed upon Hillside to $2,000. As so modified, the order of the Board is affirmed and judgment is entered in favor of the Illinois Environmental Protection Agency and against Hillside Stone Corporation for $2,000 and costs and execution ordered to issue. Ill. Rev. Stat. 1973, ch. 110, par. 275(b); ch. 110A, par. 335(h)(2).

Order modified and, as modified, affirmed and judgment entered.

BURKE and SIMON, JJ., concur.