ARCHER DANIELS MIDLAND, Petitioner, v. THE POLLUTION CON-
TROL BOARD *et al.*, Respondents.

Fourth District   No. 4—86—0296

Opinion filed October 30, 1986.

Wayne L. Bickes, of Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, of Chicago, and Vincent J. Moreth, Special Assistant Attorney General, of Springfield, of counsel), for respondents.

JUSTICE WEBBER delivered the opinion of the court:

The Illinois Environmental Protection Agency (EPA) filed a complaint before the Pollution Control Board (Board) alleging that Archer Daniels Midland Corporation (ADM) violated certain provisions of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*) and the regulations promulgated thereunder. The Board found that ADM had committed certain violations of the Act and regulations and imposed a penalty of $40,000. On appeal we upheld the Board's findings but vacated the penalty. We remanded the cause to the Board for a "determination as to whether under all the circumstances present any penalty is justified, and if so, to calculate it in conformity with views expressed in [our] opinion." (*Archer Daniels Midland Co. v. Pollution Control Board* (1983), 119 Ill. App. 3d 428, 438, 456 N.E.2d 914, 920.) On remand the EPA and ADM stipulated that a penalty in the amount of $15,000 would be appropriate. The Board rejected the proposed settlement agreement and imposed a penalty in the amount of $32,500. ADM appeals.

The facts underlying the dispute herein were elicited at a hearing before the Board and are set forth in detail in the prior opinion of this court. No new evidence was presented on remand. Briefly, the facts are summarized below.

The ADM West Plant, a soybean and corn germ-extraction plant and vegetable refinery, is located in Decatur. A small stream runs south from the West Plant area to Lake Decatur. Just before emptying into Lake Decatur, the stream is dammed to create the Homewood Fishing Club Lake. About 16 residences have been erected around Homewood Lake, and about 30 persons lived there at the time of the hearing.

The complaint alleged that on six occasions between July 1975 and July 1979 ADM permitted effluents from the West Plant to be discharged into the stream, thus contaminating Homewood Lake. The complaint also alleged that a fish kill had resulted from the contamination and that at various times ADM had violated the provisions of its

National Pollutant Discharge Elimination System (NPDES) permit.

The six occurrences described in the complaint involved ADM's storm-water collection system. On five occasions contaminated water was discharged into the Homewood tributary as the system's tanks overflowed. On the sixth occasion contaminated water was inadvertently discharged into the Homewood tributary while one of the system's tanks was being cleaned. Following each occurrence, ADM took steps to prevent the happening of a similar occurrence in the future. Letters from ADM to the EPA showed that ADM allowed contaminated storm water to be discharged from a holding tank on other occasions.

Several witnesses testified to fish kills in Homewood Lake. Several former and present residents of the area surrounding Homewood Lake testified to their displeasure over the condition of Homewood Lake. Most of the residents stated that the value of their properties increased during the relevant time period.

Evidence was also presented concerning ADM's role in the social, cultural, and economic life in the area. ADM had expended $4.5 million in its environmental efforts over the five or six years preceding the hearing and stood ready to spend an additional $1 million if a solution could be found to the problems caused by heavy rains.

As already mentioned, the penalty imposed by the Board was vacated, and the cause was remanded for a determination of whether a penalty should be imposed, and if so, the amount of the penalty. On remand the parties stipulated to the appropriateness of a penalty in the amount of $15,000. On November 7, 1985, the Board entered an order rejecting the proposed settlement. On March 27, 1986, the Board entered an order imposing a penalty in the amount of $32,500. ADM appeals, arguing that the Board erred in rejecting the settlement reached between the parties and in imposing a penalty in the amount of $32,500.

■ Before addressing the merits, we must address a jurisdictional question raised by the Board. The Board argues that the November 7, 1985, order rejecting the proposed settlement agreement was a final and appealable order and that ADM's failure to file a notice of appeal within 35 days thereafter deprives this court of jurisdiction. The Board's position is without support in the law.

Section 41(a) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1041(a)) provides:

"Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party ad-

versely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review within thirty-five days after entry of the order or other final action complained of, pursuant to the provisions of the Administrative Review Law, as amended and the rules adopted pursuant thereto, except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose and not in the Circuit Court."

The Board states that its November 7, 1985, order was a final order deciding the issue of whether a penalty should be imposed and appealable pursuant to section 41. However, the November 7, 1985, order was not final for purposes of appealability since the amount of the penalty had not yet been determined. In its brief, the Board freely acknowledges that on November 7, 1985, it had not yet determined the amount of the penalty. A judgment is final if it determines the litigation on the merits so that, if affirmed, the only things remaining is to proceed with the execution of the judgment. (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 435 N.E.2d 480.) Here, if ADM had sought review of the November 7, 1985, order, and if this court had affirmed on review, the Board, on remand, would have had to fix the amount of the penalty. For this reason, the November 7, 1985, order was not a final order, and this court does not lack jurisdiction.

Turning to the merits, we address ADM's argument that the board erred in rejecting the proposed settlement of the parties and in imposing a penalty in the amount of $32,500. Because of our disposition explained below, we will address only ADM's arguments concerning the Board's November 7, 1985, order.

ADM argues that in rejecting the proposed settlement, the Board considered improper factors. ADM argues that the Board improperly considered the possible contamination of Lake Decatur and the size and economic strength of ADM. ADM states that in our prior opinion we rejected these factors and our rulings therein have become the law of the case.

ADM's position is unsupported by the language of the November 7, 1985, order. Although the order states that the water from Homewood Lake eventually flows into Lake Decatur, the order does not show that the Board relied on this finding in rejecting the proposed settlement. The Board's order also contains the following language:

"The Board, however, disagrees with the Agency's assertion that this sum will serve to enhance enforcement of the Act, and hereby rejects the Stipulation of Penalty. Many considerations are relevant in arriving at a penalty amount. These include: the

nature of the violation, the violator's efforts to rectify the problem, the environmental harm caused, as well as the economic situation of the violator. The penalty stipulated to herein is inadequate to address these considerations under the facts of this case."

Although the order states that the Board relied upon the "economic situation of the violator," we do not believe that this constitutes sufficient proof that the Board improperly relied upon ADM's size and economic strength in rejecting the proposed settlement. While the Board's November 7, 1985, order does not affirmatively show that the Board considered improper factors, we nonetheless believe that the Board acted arbitrarily.

■ Section 33(c) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1033(c)) provides:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

In addition, the good faith, or the lack thereof, on the part of ADM is pertinent to the issues of whether a penalty should be imposed, and, if so, the amount of the penalty. (See *Standard Scrap Metal Co. v. Pollution Control Board* (1986), 142 Ill. App. 3d 655, 491 N.E.2d 1251.) Imposition of penalties under the Act is not to be invoked for punishment but to aid enforcement of the Act. *Harris-Hub Co. v. Pollution Control Board* (1977), 50 Ill. App. 3d 608, 365 N.E.2d 1071.

■ We believe that substantial mitigating circumstances exist which cast doubt on the reasonableness of the Board's decision. (See *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406.) In its order the Board stated that "a substantially higher penalty than $15,000 is supported by the record given the continuing nature of ADM's violations and the serious environmental consequences." As we noted in our previous opinion, this is not a case

of " 'continuing blatant disregard for requirements and procedures designed to protect the environment while permitting useful operations.' " (*Archer Daniels Midland Co. v. Pollution Control Board* (1983), 119 Ill. App. 3d 428, 438, 456 N.E.2d 914, 920 (distinguishing *Wasteland, Inc. v. Pollution Control Board* (1983), 118 Ill. App. 3d 1041, 456 N.E.2d 964).) We stated that quite the opposite is true, noting that ADM has spent $4.5 million for environmental improvements and stands ready to spend another $1 million if a solution can be found. The Board should have considered that ADM had taken substantial steps to eliminate the problems in the storm-water collection system. (See *Hillside Stone Corp. v. Pollution Control Board* (1976), 43 Ill. App. 3d 158, 356 N.E.2d 1098.) Additionally, the Board should have considered ADM's good faith in reporting the violations to the EPA and ADM's value to the community.

▪ Having decided that the action of the Board was arbitrary, we must then decide what disposition is to be made of this matter. We believe that further proceedings before the Board would be futile. Our prior opinion held that a fine of $40,000 was excessive and this became the law of the case. Nonetheless, on remand the Board fixed a fine of $32,500, which we deem to be so close to our reversal of $40,000 as to violate the law of the case. There is authority for this court to make its own independent determination of a proper fine. (*Hillside Stone Corp. v. Pollution Control Board* (1976), 43 Ill. App. 3d 158, 356 N.E.2d 1098.) We have considered the entire record from the inception of this litigation, and it is our independent judgment that $15,000 is adequate to aid in the enforcement of the Act and to serve as a deterrent to ADM against future violations. We are empowered by section 41(d) of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1041(d)) to review all issues of law and fact.

In pollution control cases we sit as the first court in administrative review (Ill. Rev. Stat. 1985, ch. 111½, par. 1041(a)) and as such possess all the powers conferred on circuit courts sitting in administrative review. Therefore, pursuant to the power vested in us by section 3—111(8) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 3—111(8)) the Board's order insofar as it determined that some fine was appropriate is affirmed but reduced to $15,000. Judgment is entered in favor of the Board and against ADM for $15,000 for which execution may issue.

Order affirmed as modified and judgment entered.

McCULLOUGH, P.J., and GREEN, J., concur.