THE CITY OF ROCKFORD, Petitioner-Appellant, v. THE COUNTY OF WINNEBAGO, Respondent-Appellee (The Pollution Control Board, Respondent).

Second District No. 2—88—1181

Opinion filed July 19, 1989.

Ronald N. Schultz, of City of Rockford Department of Law, of Rockford (Douglas P. Scott, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, and Dorothy M. Gunn, of Pollution Control Board, of Chicago (Robert J. Ruiz, Solicitor General, and Michelle D. Jordan, Matthew J. Dunn, Joseph J. Annunzio, and Michael A. Kreloff, Assistant Attorneys General, of Chicago, of counsel), for respondent Pollution Control Board.

Paul A. Logli, State's Attorney, of Rockford (Gary L. Kovanda, Assistant State's Attorney, of counsel), for respondent Winnebago County Board.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, City of Rockford (City), appeals from a decision of the Illinois Pollution Control Board (PCB) affirming the decision of the Winnebago County Board (WCB) denying the City's application for site approval of a new regional pollution control facility.

On appeal, the City raises the following issues: whether the decision of the WCB denying the site approval was timely made; whether the decision by the PCB upholding the decision of the WCB was timely and completely made; whether the decision by the WCB was the product of a fundamentally unfair process due to *ex parte* contacts or to the unfamiliarity of the WCB's members with the record; and whether the decision of the PCB with respect to the merits of the decision of the WCB was against the manifest weight of the evidence.

On December 4, 1986, the City filed its application for site approval of a new landfill with the WCB pursuant to section 39.2(c) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(c)). According to the application, the new landfill was to be located at the northeast corner of Baxter and Mulford Roads, was to consist of approximately 55 acres, and was to accept household nonhazardous waste from Winnebago County residents for approximately 19.6 years.

Commencing in March 1987 and through April 13, 1987, the WCB

held hearings on the application. At the hearings, testimony was elicited from witnesses called by the City and by Save the Land, Inc., a group objecting to the granting of the application. Both sides called expert witnesses who, in turn, testified either in favor of or against the granting of the application.

Section 39.2(a) of the Act provides that approval of the site application will be granted only if the facility meets the following applicable criteria:

"(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain *** or the site is flood-proofed ***;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows ***."

Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).

After meeting to discuss the recommendation of the zoning committee, on May 28, 1987, the WCB voted to deny site approval, determining that the City had met criterion (iv) but not the other five criteria. On June 3, 1987, the City was given written notice of the decision together with the reason for denial of the application. Also on June 3, 1987, the City filed a petition for hearing before the PCB.

On September 1, 1987, a hearing was held before a hearing officer of the PCB. The witnesses called by the City were or had been WCB members at the time of the May 28, 1987, vote. Before the PCB, the City argued that the WCB's decision as to the five criteria was against the manifest weight of the evidence and that the hearing before the WCB was fundamentally unfair due to *ex parte* contacts between the WCB and those opposed to the landfill site. The City also agreed to extend the PCB 120-day deadline for ruling (see Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a)) to November 19, 1987.

On November 19, 1987, the PCB issued its opinion. The PCB, noting that some of the communications to WCB members were *ex parte* and concerned that some WCB members had prejudiced the case, con-

cluded that fundamental fairness required supplementary hearings. The PCB specifically instructed the WCB as follows:

"The Board [PCB] will vacate and remand the decision of the County with the following instructions: a) Winnebago County Board Members Bell, Barnard, Connelly, and Giorgi are disqualified from participating further in this matter; b) The substance of known *ex parte* contacts shall be made a part of the record and shall be the subject of an additional hearing; and c) The Winnebago County Board shall render a decision based exclusively on the six criteria of Section 39.2 of the Act and exclusively upon evidence in the record.

This will allow the substance of most if not all *ex parte* contacts, as well as the contact of radio and other ads, to be reviewed on the record. It will give all County Board Members a chance to re-evaluate the record and render a decision based solely on that record. The Board notes that the hearing record itself appears to be complete and developed in a fundamentally fair manner. This process should remove the procedural clouds from this proceeding and allow it to proceed on the merits."

The City sought leave to appeal from the decision of the PCB, but leave was denied by this court in January 5, 1988.

A supplemental hearing was held by WCB zoning and planning committee on February 27, 1988, at which time, 18 members of the WCB testified as to the scope of *ex parte* contacts they had received. An additional hearing was held on March 10, 1988, at which time five members of the WCB testified. Thereafter, the record was left open for 30 days to allow for public comment.

On June 9, 1988, WCB adopted the resolution of the zoning and planning committee which stated that the City had failed to meet its burden of proof on criteria (i), (ii), (iii), (v), and (vi) of section 1039.2(a) of the Act. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).) WCB members, disqualified by the PCB, did not participate in the voting, nor did one member who recused herself at the request of the City. Again, the City petitioned the PCB for a hearing, which was held on September 13, 1988, before the same hearing officer.

At the September 13, 1988, hearing, the City called 15 WCB members to testify, as well as the WCB secretary. The record was then supplemented by stipulation of the parties with the transcript of the May 19, 1988, county zoning and planning committee meeting; a transcript of the portions of the June 9, 1988, WCB meeting; and the evidence deposition of WCB member Scott Christensen.

On November 17, 1988, the PCB entered its decision and order af-

firming the decision of the WCB. The PCB ruled that the City had not been denied fundamental fairness. The impact of the *ex parte* contacts was deemed insufficient to justify an overturning of the WCB's decision since the City had ample opportunity to present its case. The PCB found that the WCB had properly based its decision on the six criteria set forth in the statute (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)) and that the City had not proved that the WCB's decision was against the manifest weight of the evidence. This appeal followed.

The City contends, first, that the decision of the PCB was not made in a timely manner, and, therefore, the City's application should be deemed approved.

Section 40.1(a) provides in pertinent part as follows:

> "If there is no final action by the Board within 120 days, petitioner may deem the site location approved \*\*\*." Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a)

The City calculates the time from the first appeal to the PCB on July 2, 1987, to the final action taken by the PCB on November 19, 1988, or 504 days. The City argues that the decision of the PCB to remand the case back to the WCB was not a final action, but rather an interlocutory order as evidenced by the following order of the PCB issued November 25, 1987:

> "On November 19, 1987, the Board, by a 5-2 vote, vacated the decision of the Winnebago County Board ('County') which denied site location suitability approval, and remanded the matter back to the County. The Order of November 19, 1987, is an interlocutory order not otherwise appealable except in accordance with Supreme Court Rule 308 ('SCR')."

The City also argues that the November 19, 1987, decision of the PCB cannot be considered as a "final decision," because it did not deal with any of the six statutory criteria. Moreover, the City's petition was neither approved nor denied but rather remanded for a new vote after the *ex parte* contacts had been made of record and certain members of the WCB disqualified. Finally, the City argues that nowhere is the PCB granted the "authority" to remand a case. *A.R.F. Landfill, Inc. v. Pollution Control Board* (1988), 174 Ill. App. 3d 82, 90-91.

The City has drawn the definitions of "final order" too narrowly. Pollution Control Board Rule 103.224 (35 Ill. Adm. Code §103.224 (1985)) provides in pertinent part as follows:

> "The Board shall prepare a written opinion and order for all final determinations which shall include:

\*\*\*

(b) The final order or determination of the Board. The Board Order may include any or all of the following:

\* \* \*

(6) Such other order that may be appropriate."

Although a remand order is not specifically enumerated in the above provision, it is certainly an "appropriate" order here where the PCB determined that fundamental fairness required supplemental proceedings. Further, since a remand was an appropriate order in this case, then it is a "final order" under the provisions of the PCB rules. The City's reliance on *Archer Daniels Midland v. Pollution Control Board* (1986), 149 Ill. App. 3d 301, is misplaced. In that case, the court determined that the PCB order imposing a penalty was not a final order for the purpose of appeal because the amount of the penalty had not been determined. A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. (*Flores v. Dugan* (1982), 91 Ill. 2d 108.) In *Archer Daniels Midland*, even had the case been affirmed on appeal, the Board on remand would still have had to fix the amount of the penalty. In the case before us, the PCB had no further acts to perform.

We conclude, therefore, that the November 19, 1987, order remanding the case to the WCB was a proper and final order and was entered within the 120-day time period, plus agreed upon extensions, set forth in section 40.1(a) of the Act. Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a).

Next, the City contends that the June 9, 1988, decision of the WCB was not timely made and that, therefore, the application of the City should be deemed approved.

Section 39.2(e) of the Act provides in pertinent part as follows:

"If there is no final action by the county board or governing body of the municipality within 180 days after the filing of the request for site approval the applicant may deem the request approved." Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(e).

The City calculates the time from the date it received the remand order from the PCB, November 23, 1987, to the date of decision by the PCB denying the application, June 9, 1988, as 199 days.

The PCB contends that the City has waived the 180-day rule by accepting the WCB's decision to toll the 180-day period and then participating in the hearing after the passage of the deadline. The PCB argues that the 41 days between the PCB remand and the appellate court's dismissal of the City's petition for leave to appeal should not

be counted as part of the 180-day period, because the City knew that the Board was not including that time period in its calculation of the 180-day period and never objected.

Using the City's calculations, the 180-day period ended on May 21, 1988. On May 19, the county's zoning and planning committee met to take up the question of the City's siting application. Also present at this meeting was the City attorney, Douglas Scott. The chairman, Pete McKay, noted that all the parties were "on hold" while the case was on appeal and announced that a final vote would therefore be scheduled by the full county board on June 9, 1988. The following colloquy occurred:

> "McKay: Doug, you got anything to add to this? *** You know the schedule and on what we're proposed to do and so forth?
>
> Scott: Yes."

The PCB argues further that on May 26, 1988, past the deadline of May 21, 1988, the City attorney sent a letter to the chairman of the county board asking that any WCB members influenced by *ex parte* communications be asked to recuse themselves. The City attorney also requested that one WCB member, not removed by the PCB's order, nevertheless recuse herself in the upcoming vote. The letter contained no notice or indication that the City considered the 180-day deadline to have run.

■ We believe that the recent case of *Citizens Against the Randolph Landfill (CARL) v. Pollution Control Board* (1988), 178 Ill. App. 3d 686, is dispositive of this issue. In that case, the court determined that a site applicant was not entitled to automatic approval even though the county board took 206 days before rejecting the application.

Although the *"Carl"* case also involved a dispute over whether the site application had been filed as of January 22, 1987, as argued by the plaintiff or on March 17, 1987, as argued by the defendant, in determining when the 180-day deadline ran, the court assumed that January 22, 1987, was the correct date. The court then stated as follows:

> "On the basis of a January 22, 1987, filing date, the deadline for county board action on the disposal company's application would have been July 23, 1987; on the basis of a March 17, 1987, filing date, the deadline would have been September 23, 1987. The disposal company filed an opening brief on July 20, 1987, CARL [plaintiff] filed a brief on August 3, 1987, and the disposal company filed a reply brief on August 7, 1987. By par-

ticipating in public hearings after the deadline for such hearings had passed on the basis of a January 22, 1987, filing date and by filing a reply brief after the deadline for county board action had passed on the basis of a January 22, 1987, filing date, the disposal company waived its right to a decision by the county board on or before that purported deadline." 178 Ill. App. 3d at 696.

We are of the opinion that the rule set forth in the above case is equally applicable in the case before us. The City, without notice to the WCB of its intent to hold to the 180-day deadline, continued to participate in the proceedings and failed to object when it had an opportunity to do so, which put the rendering of the decision beyond the 180-day deadline. Therefore, we conclude that the City has waived compliance with the 180-day deadline for action on the application.

Next, the City contends that the decision of the PCB that the WCB hearing was fundamentally fair was contrary to the manifest weight of the evidence. Specifically, the City argues that the City was not "heard" on the issues and that the number of *ex parte* contacts influenced some of the WCB members, who thus ruled on the basis of factors outside the record.

■ In reviewing the decision of the WCB, the PCB is to take into consideration the "fundamental fairness of the procedures used by the county board *** in reaching its decision." (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1(a).) In *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1036-37, this court defined the parameters for fundamental fairness considerations of a local government in ruling on a regional pollution control facility application, stating:

> "Administrative proceedings are governed by the fundamental principles and requirements of due process of law. [Citation.] Due process is a flexible concept and requires such procedural protections as the particular situation demands. [Citation.] In an administrative hearing, due process is satisfied by procedures that are suitable for the nature of the determination to be made and that conform to the fundamental principles of justice. [Citations.] Furthermore, not all accepted requirements of due process in the trial of a case are necessary at an administrative hearing. [Citation.] *** Due process requirements are determined by balancing the weight of the individual's interest against society's interest in effective and efficient governmental operation." 175 Ill. App. 3d at 1036-37.

■ The City points out that a number of the WCB members tes-

tified as to varying degrees of unfamiliarity with the record, or even to no knowledge of the existence of the record in this case. Further, the City points to the testimony of Terry Knight, the secretary of WCB, in which she stated that the record was kept in a locked room in the office she worked which was open 8 a.m. to 5 p.m., and in order to locate the record, the WCB member would have to ask her to unlock the door. According to Ms. Knight, during the entirety of the public hearings, spring of 1987 and spring of 1988, only four or five members so approached her. Of the five, only one voted against the City application, and none of the five who entered the room did so after the remand by the PCB. Finally, the City points out that there is no testimony that WCB members made special arrangements to see the record while the office was closed. Although there was testimony that the county administrator's and the State's Attorney's offices had keys, there was no testimony that WCB members sought their help in viewing the record.

In *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, Waste Management complained that an adverse decision of the Lake County Board (LCB) was due to the fundamentally unfair decision process. Following the hearing on Waste Management's site application, the hearing committee made a recommendation to the LCB to deny the application, which resolution was adopted by the LCB. On appeal, the reviewing court held that Waste Management's attempt to separate the consideration of its application by the LCB and the hearing committee was unavailing. The court stated as follows:

> "The entire county board need not be present at the hearing held before the five-member committee for fundamental fairness does not require the personal attendance of the entire board. [Citations.] As long as the record was made available for review by the full county board, all members heard the case irrespective of their attendance. [Citation.] In this case, the entire record was available for all the board members to review. The only requirement imposed on the board by the statute is that its decision be in writing and specify the reasons for the decision." 123 Ill. App. 3d at 1080-81.

The City argues that the case before us is distinguishable from the recent case of *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023. In that case, this court, in response to an argument that the county board did not have adequate time or reasonable opportunity to consider the record before it as regards the vote on the decision, reiterated its prior holding that

fundamental fairness in this context does not require the full county board to debate the hearing committee's recommendation so long as the record is made available for review by the entire county board. (175 Ill. App. 3d at 1044.) The City distinguishes the present case on the basis that in *Waste Management* there was testimony that "transcripts of the local hearings were 'routinely made available within a couple of days after the hearing date' " (175 Ill. App. 3d at 1044), and evidence summaries were received by board members prior to the full county board hearing.

As our previous opinions have pointed out, the only statutory requirement concerning the decision of the county board is that its decision be in writing and specify the reason for the recision. (*Waste Management*, 175 Ill. App. 3d at 1044; *Waste Management*, 123 Ill. App. 3d at 1081.) That the record was available to the WCB can be gleaned from the testimony of Terry Knight, the board secretary. Whether the board members availed themselves of the opportunity to review the record is not an issue relevant to this case, as there is no such requirement that they do so.

The City then argues that the *ex parte* contacts rendered the proceedings fundamentally unfair. We disagree.

The initial decision adverse to the City was remanded by the PCB on the basis that *ex parte* contacts deprived the City of a fundamental fair proceeding. The PCB also ordered that certain members of the county board recuse themselves from participating in the vote. After the conclusion of the hearing and just prior to the June 9, 1988, meeting, the City requested that an additional member of the board recuse herself which she did do. The City made no further requests for recusal. The decision was thereafter made by nondisqualified members of the county board.

■ Generally, a failure to object at the original proceeding constitutes a waiver of the right to raise an issue on appeal. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38.) A claim of bias or prejudice on the part of an administrative agency or the judiciary must be asserted promptly after knowing of the alleged disqualification, since it would be improper to allow a party to withhold a claim of bias until it obtains a unfavorable ruling. *Waste Management*, 175 Ill. App. 3d at 1039, 1040.

■ We agree with the PCB that the remand and placing of the *ex parte* contacts on the record removed the danger of prejudice. It is true that the tone of these contacts was adverse to the granting of the site application. However, the existence of strong public opposition does not invalidate the board's decision where the applicant was

given an opportunity to present its case and where the applicant has not demonstrated that the board's denial was based upon public opposition rather than the record. *Waste Management*, 123 Ill. App. 3d at 1081-82.

■■ We are of the opinion that the PCB's decision that the WCB hearing was fundamentally fair was not against the manifest weight of the evidence.

Finally, the City contends that the decision of the PCB is incomplete and contrary to the weight of the evidence and therefore should be reversed.

The City argues that the PCB's decision is incomplete because it rendered a decision in the instant case on only one of five contested criteria, affirming the decision of the WCB that criterion (ii) of section 39.2 of the Act had not been proved by the City. The City maintains that in light of this court's decision in *Waste Management* (175 Ill. App. 3d 1023), and the failure of the PCB to follow it, its decision must be reversed. Again, we disagree with the City's position on this issue.

In *Waste Management* (175 Ill. App. 3d 1023), Waste Management contended that the PCB erred in failing to consider criteria (ii), (iii), and (vi) after affirming the Lake County board on criterion (i). In determining this issue, this court stated as follows:

"[A]lthough the Act does not specifically require the PCB to review each of the challenged criteria in the event it can affirm on any one of the criteria, we believe the statutory duty to review the decision and the reasons for the decision of the county board pursuant to section 40.1 requires the PCB to review and to decide whether all the challenged findings of the county board are against the manifest weight of the evidence. It is clearly more efficient for the PCB to conduct a complete review of all challenged criteria, thereby presenting a complete record in the event of an appeal. Because the appellate court must have the benefit of the PCB's expert consideration of each criterion before reviewing its decision [citation], the failure of the PCB to review each criterion will result in a remand to the PCB if the appellate court reverses the PCB. The PCB admits in this case that if we reverse as to criterion (i), 'this court should remand the case back to the PCB for initial review of the record on criteria 2, 3 and 6.' As a matter of judicial economy and efficiency, and in light of the PCB's role as an administrative body possessing expertise in this area, we believe the PCB has a statutory obligation under section 40.1 to con-

duct a complete review of all challenged statutory criteria under the Act in its initial review of an appeal from the decision of a local board. *Because we affirm the PCB's decision as to criterion (i), in this case we need not remand for consideration of the remaining criteria. Waste Management is not prejudiced in this circumstance by the failure of the PCB to review all criteria acted on by the LCB [Lake County Board].*" (Emphasis added.) 175 Ill. App. 3d at 1034-35.

The City seeks reversal not remand in this case on the basis that if the PCB's failure to obey the "clear" mandate of this court results in a remand, then the City is penalized by the expense of having to go through another hearing, a result the City maintains was clearly not intended by the Act or by this court. The City further argues that the decision of the PCB that the City failed to meet its burden of proof that the landfill was safely located and designed was against the manifest weight of the evidence.

■ The role of a reviewing court on administrative review is limited to a determination of whether the administrative agency's decision is contrary to the manifest weight of the evidence, and, as such, a reviewing court should not reweigh the conflicting testimony.

■ As we noted earlier in this opinion, the City and Save the Land, Inc., presented expert witnesses, all of whom testified as to the feasibility of the City's landfill application. Rather than a detailed account of each witness' testimony, suffice it to say that the City's witnesses testified in favor of the application, and Save the Land, Inc.'s, witnesses testified against the granting of the application. The City argues that its witnesses were more expert. However, the City also states in its brief as follows:

"In summary, rather than the County Board being faced with many 'uncontroverted facts' that could have led the County Board to rule as they did (PCB decision at page 8), the fact is that all of the reasons cited were controverted, in many instances by testimony uncited by the PCB which was in quite close proximity to the facts they picked out."

Since it is not our function to determine which witnesses are more expert than others, and since we may not decide controverted facts, which are bases for the City's challenges to the PCB's decision, we are of the opinion that the PCB's decision on criterion (ii) must stand. Therefore, since the PCB's decision with respect to criterion (ii) will stand, there is no necessity for a remand, and since the City suffered no prejudice, there is no need for the punitive measure of reversal of the PCB's decision as requested by the City.

 We must comment at this point that we do not disagree with the City's argument that the opinion in *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, did require the PCB to review all of the criteria acted upon by the WCB. However, we note that our opinion in that case was issued just prior to the issuance of the PCB's opinion in the instant case. We further note that the PCB here may in fact have been misled by our opinion since in that opinion we affirmed the PCB's decision even though it considered only one of the criteria. Therefore, we reiterate that the PCB must review all of the criteria acted upon by the county board or other unit of local government even though a negative decision as to one of the criteria is sufficient to defeat the application. This will avoid remands, costly in terms of both time and expense. This rule shall be applicable to all cases not yet filed for review before the PCB as of the date of the filing of this opinion.

For all of the foregoing reasons, we affirm the decision of the PCB.

Affirmed.

LINDBERG and DUNN, JJ., concur.