McLEAN COUNTY DISPOSAL, INC., Petitioner, v. THE COUNTY OF McLEAN *et al.*, Respondents.

Fourth District    No. 4—90—0111

Opinion filed January 17, 1991.

478

Immel, Zelle, Ogren, McClain & Costello, of Springfield (Thomas J. Immel, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, So-

licitor General, and Michelle D. Jordan, Matthew J. Dunn, and Patricia E. Collins, Assistant Attorneys General, of Chicago, of counsel), for respondent Pollution Control Board.

Eric T. Ruud, Assistant State's Attorney, of Bloomington, for respondent County of McLean.

JUSTICE McCULLOUGH delivered the opinion of the court:

McLean County Disposal, Inc. (MCD), appeals an order of the Illinois Pollution Control Board (PCB) affirming the McLean County board's denial of siting approval for a proposed regional landfill. (*McLean County Disposal, Inc. v. County of McLean* (Nov. 15, 1989), ____ Ill. PCB Op. 89-108.) Initially, MCD argues the decision of the county board was contrary to the manifest weight of the evidence. MCD urges this court to find the PCB erred in reviewing the county board's decision under the "accepted" manifest weight standard. MCD also argues its siting application should be deemed approved by operation of law.

We affirm.

■■ Although the record in the instant case is lengthy, only the evidence necessary for an understanding of the instant decision will be summarized. Initially, a brief review of the statutory framework will be presented as a context for the issues alleged. Section 39.2(a) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(a)) sets forth criteria which must be met prior to the approval of a siting application for a regional landfill. Only those criteria applicable to nonhazardous waste apply here. Section 39.2(a) states:

> "The county board of the county or the governing body of the municipality, as determined by paragraph (c) of Section 39 of this Act, shall approve or disapprove the request for local siting approval for each regional pollution control facility which is subject to such review. An applicant for local siting approval shall submit sufficient details describing the proposed facility to demonstrate compliance, and local siting approval shall be granted only if the proposed facility meets the following criteria:
>
> (i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;
>
> (ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain or the site is flood-proofed;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows." (Ill. Rev. Stat. 1989, ch. 111½, pars. 1039.2(a)(i) through (vi).)

The county is required to consider evidence on each of the statutory criteria. (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2.) Petitioner has the burden of proof.

■■ Each of the statutory criteria must be met before the local board may approve a siting application. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 530 N.E.2d 682; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 513 N.E.2d 592.) The legislature has charged the county board, rather than the PCB, with resolving the technical issues such as public health ramifications of the landfill's design. (*Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, 487 N.E.2d 743.) The broad delegation of authority to the local board reflects the legislative understanding that the local board hearing, which provides the only opportunity for public comment on the site, is the most critical stage of the process. *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664; *Kane County*, 139 Ill. App. 3d 588, 487 N.E.2d 743.

■■ The PCB may review the factual findings of the local board and consider whether those findings are against the manifest weight of the evidence. It is not to reweigh the evidence or make new credibility determinations. (*Waste Management*, 160 Ill. App. 3d 434, 513 N.E.2d 592.) In *City of Rockford v. Pollution Control Board* (1984), 125 Ill. App. 3d 384, 465 N.E.2d 996, the court discussed the function of the PCB in reviewing local officials' siting decisions and held the PCB properly found a siting decision was contrary to the manifest weight of the evidence.

"We first address the standard of review applicable to the proceedings before the city council. *** This court has held that the manifest weight of the evidence standard applies to the review of site location decisions made by a governing body

under section 39.2 of the Environmental Protection Act. Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2. * * *

* * *

Our conclusion is supported by an analysis of the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1001 *et seq.*). Section 3(a) of the Act defines 'Agency' as the Environmental Protection Agency and defines 'Board' as the Pollution Control Board. (Ill. Rev. Stat. 1983, ch. 111½, par. 1003(a), (c).) Section 39 deals with the issuance of permits. (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.) Section 39(a) allows the Board to require permits and requires the agency to issue permits upon proof that the applicant has complied with the Act. (Ill. Rev. Stat. 1983, ch. 111½, par. 1039(a).) Section 39(c) requires the applicant who proposes to develop or construct a new regional pollution control facility first to obtain proof that the local government entity has approved the site location in accordance with section 39.2 of the act. (Ill. Rev. Stat. 1983, ch. 111½, pars. 1039(c), 1039.2.) Section 39.2, at issue in this case, requires the local governing entity to approve site location suitability considering six listed criteria which together have the effect of making a uniform set of zoning standards for the location of regional pollution control facilities throughout the State. Houlihan & Flynn, *The Siting of Sanitary Landfills and Other Waste Management Facilities—The Legislature Acts*, 70 Ill. B.J. 434, 437 (1982).

Comparing section 39(a), granting the agency general authority to issue permits, with section 39.2, granting the local governmental entity authority to approve site location, it appears that the local governmental entity has been given the adjudicatory function otherwise located in the agency itself. The fact that the statute contains parallel review procedures in section 40 (Ill. Rev. Stat. 1983, ch. 111½, par. 1040, providing for Board review of Agency denial of permits), and in section 40.1 (Ill. Rev. Stat. 1983, ch. 111½, par. 1040.1, providing for Board review of local governmental entity denial of site location approval), reinforces the view that in site location decisions the local governmental entity performs an adjudicatory function. Adjudicatory decisions made by an administrative agency are reviewed under a manifest weight of the evidence standard. [Citations.]

II

We conclude that the PCB properly found *Rockford*'s siting

decision to be against the manifest weight of the evidence." (*City of Rockford*, 125 Ill. App. 3d at 386-88, 465 N.E.2d at 998-99.)

(See also *Waste Management of Illinois v. Illinois Pollution Control Board* (1987), 160 Ill. App. 3d 434, 513 N.E.2d 592.) Several courts have rejected the argument that the PCB should apply a more critical standard of review to local board decisions or conduct a *de novo* hearing. See *Waste Management*, 160 Ill. App. 3d 434, 513 N.E.2d 592 (and the cases cited therein).

■■ Similarly, the role of the reviewing court on administrative review is limited to a determination of whether the administrative agency's decision was contrary to the manifest weight of the evidence. (*A.R.F. Landfill, Inc. v. Pollution Control Board* (1988), 174 Ill. App. 3d 82, 90-91, 528 N.E.2d 390, 395-96; *McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 506 N.E.2d 372; *City of Rockford*, 125 Ill. App. 3d 384, 465 N.E.2d 996.) When expert testimony is presented on both sides of an issue, the reviewing court may not redetermine which expert is more believable or decide controverted facts. (*City of Rockford v. County of Winnebago* (1989), 186 Ill. App. 3d 303, 542 N.E.2d 423.) In *Rockford*, the appellate court rejected an argument that the PCB's decision was contrary to the manifest weight of the evidence because the appellant's witnesses were "more expert." (*Rockford*, 186 Ill. App. 3d at 315, 542 N.E.2d at 432.) With this framework in mind, we consider the cause before us.

## I. PROCEDURAL HISTORY

On January 22, 1987, MCD delivered an application for site approval for a new regional pollution control facility (landfill) to the McLean County clerk's office. The proposed site for the landfill was near Randolph in McLean County. The clerk did not accept the application for filing on January 22, 1987, but retained it to determine whether it complied with the McLean County resolution concerning such applications and landfills.

On February 19, 1987, McLean County's Pollution Control Site Hearing Committee (Committee) directed the county clerk to reject the application. On February 20, 1987, the county clerk notified MCD of the rejection of the application and the reasons for the action. MCD submitted a supplement to its application and, on March 17, 1987, the county clerk filed the application.

Public hearings on the siting application occurred during June and July 1987. On August 18, 1987, the county board, by resolution, re-

jected MCD's application for landfill site approval. The county board acted upon the recommendation of the Committee, after the hearings and after receipt of written comments from the members of the public. The Committee recommended denial of the siting application because it felt MCD had not established the facility would provide adequate protection for water wells in the area and the entrance would cause a safety hazard. The Committee also found MCD had not located the facility so as to minimize incompatibility with the surrounding area. Finally, the Committee found the traffic patterns to and from the facility were not so designed as to minimize the impact on existing traffic flow.

MCD appealed the county board's decision to the PCB. On January 21, 1988, the PCB vacated the county board's decision. (*McLean County Disposal, Inc. v. County of McLean* (1988), 84 Ill. PCB Op. 85-201.) The PCB ruled MCD's application had been granted by operation of law, due to the county's failure to rule on the application within 180 days of the date it was delivered to McLean County. (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(e).) The PCB did not reach the merits of the county board's decision.

The county board filed a petition for reconsideration of the PCB's decision. While that petition was pending, a nonprofit corporation known as Citizens Against the Randolph Landfill, Inc. (CARL), filed a petition to intervene. The PCB denied reconsideration and denied CARL's petition to intervene. (*McLean County Disposal, Inc. v. County of McLean* (1988), 86 Ill. PCB Op. 87-13.) The county board and CARL appealed.

On December 28, 1988, this court found the PCB correctly denied CARL's petition to intervene, and affirmed the PCB's decision as to CARL. However, we found MCD waived compliance with section 39.2(e) of the Act. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(e).) This court reversed the PCB's decision as it pertained to the siting application and directed it to consider the merits of MCD's petition for review. *Citizens Against the Randolph Landfill (CARL) v. Pollution Control Board* (1988), 178 Ill. App. 3d 686, 533 N.E.2d 401 (hereinafter *CARL*).

On May 25, 1989, the PCB determined the cause must be remanded to the county board. The PCB determined the lack of a written transcript of the public hearings at the time the county board reached its initial decision raised a question of fundamental fairness. It found tape-recordings are inherently unacceptable as the sole means of reviewing the record of a public hearing. Therefore, the PCB remanded the matter to the county board for reconsideration of

the siting application after it had an opportunity to review written transcripts of the public hearing. *McLean County Disposal, Inc. v. County of McLean* (May 25, 1989), _____ Ill. PCB Op. 89-108.

A written transcript of the public hearing and the common law record were placed on file at the county clerk's office. The county board members were notified of the availability of the transcript. On June 20, 1989, the county board again denied the siting application, noted it had complied with the PCB's May 25, 1989, order, and incorporated the written findings and recommendations of its Committee as part of its decision.

MCD filed a petition for review of this decision. On July 13, 1989, the PCB redocketed the cause. On November 15, 1989, the PCB affirmed the county board's denial of site approval. *McLean County Disposal, Inc. v. County of McLean* (Nov. 15, 1989), _____ Ill. PCB Op. 89-108.

After reviewing the record and the parties' arguments, the PCB found a conflict in expert testimony existed as to the safety of the proposed site. It, therefore, determined the county board's decision was not contrary to the manifest weight of the evidence. However, the PCB determined the county board's decision about the compatibility of the landfill with the surrounding area was contrary to the manifest weight of the evidence. Finally, the PCB determined a conflict of expert testimony existed as to the impact of the site on existing traffic flow and the lack of an entrance plan. The PCB noted both of these could serve as a basis to find petitioner had not established that the facility was so designed as to minimize the impact on existing traffic flows. *McLean County Disposal, Inc. v. County of McLean* (Nov. 15, 1989), _____ Ill. PCB Op. 89-108, slip op. at 8.

After denial of its motion for reconsideration, MCD filed the instant appeal. The county board has not appealed the PCB's determination that its findings with regard to incompatibility with the surrounding area are contrary to the manifest weight of the evidence. Therefore, only the PCB's affirmance of the county board's decision regarding section 39.2(a)(ii) (public health and safety) and section 39.2(a)(vi) (traffic flow) of the Act is at issue. Ill. Rev. Stat. 1989, ch. 111½, pars. 1039.2(a)(ii), (a)(vi).

## II. THE PUBLIC HEARINGS

MCD presented three witnesses who testified about the safety of the proposed site. Charles Clark, the engineer who designed the proposed landfill, was hired after the site was purchased by MCD. Clark had been formerly employed by the Illinois Environmental Protection

Agency (Illinois EPA) and had designed several landfills. He assisted in determining the suitability of the proposed site for a landfill. Clark testified he was present when the boring logs were done at the site.

Clark stated that based upon the information gained from the soil samples, the proposed site was suitable for a landfill, met the Illinois EPA requirements for permeability of soil, and would not pose a threat to the water wells located in the subdivision three-fourths of a mile south of the site. Clark admitted that sand lenses and partings were present in the boring logs, and sand will conduct water more quickly that other types of soil. He also stated that other sand partings and lenses would probably be found during excavation of the site. However, Clark stated the sand was not part of an aquifer or continuous water-bearing strata. Clark determined this because of the type of sand which was encountered at the relative depth of several boring locations. Clark admitted that continuous sand formations are geologically common in the area. Clark noted that any sand encountered in excavating the site would be dug out and the area filled in with a compacted clay liner. The sides of the landfill would be lined as necessary.

Clark's plan did not include a clay liner for the bottom of the proposed site because he believed the bottom would be solid glacial till. Clark admitted that of the 24 borings done on the property, only 10 were done on the proposed landfill site. Clark stated that if the 10 borings did not accurately reflect the bottom of the proposed site, the sand would be excavated out of the area and the area lined. Only one boring was made in the center of the proposed site. The boring did not extend to the bottom of the site. Clark stated he did not wish to drill a hole through the bottom of the proposed site as this could cause a permeability problem.

Clark stated leachate would develop at the site. However, he did not propose a leachate-collection system. He believed all leachate would be contained within the site. Clark determined the southern one-half of the property purchased by MCD was not suitable for a landfill. Boring logs in this area showed continuous sand and gravel deposits. However, Clark believed the northern and southern halves of the property could be separated. Clark admitted the development of methane was inevitable at the landfill. However, he stated monitoring equipment was not planned. If methane became a problem, gas wells or flares could be installed at a later date.

Michael Rapps, the engineer who prepared the hydrogeological report for MCD, testified that based upon the nature of the area and the ground water in the area, if the ground water became contami-

nated and flowed straight south to the subdivision, well water would not become contaminated for 180 years. Rapps stated he excluded factors which would retard ground water flow in reaching his conclusion. Rapps also stated the dilution factor would render any leachate leaving the facility virtually unnoticeable. Rapps stated sound engineering practice would not be followed by drilling boring logs through the bottom of the proposed landfill site.

Rapps stated the southern portion of the property purchased by MCD was not suitable for a landfill due to extensive sand and gravel and a thick water-bearing zone near the surface. However, he believed the proposed site, the northern portion of the property, did not contain any continuous permeable strata. During cross-examination, Rapps admitted that it was possible for permeable sand seams within the site to be connected with sand to the south of the site. Water from the site could flow south.

Robert Hahn, the engineer who conducted the soil permeability testing, also testified. Hahn stated the soil at the proposed site was predominantly glacial till. Any sand found was discontinuous. Hahn testified the soil permeability tests met the requirements of the Illinois EPA.

Dr. Robert Morse, an engineer with a doctorate in engineering and geology, testified the borings conducted by MCD were inadequate. Due to the lack of borings, the safety of the site was questionable as not enough was known. Morse stated that geologically, the proposed site was unsuitable for landfill. Morse stated the bottom was "especially treacherous" because major sand seams could be located just below the bottom of the proposed site. Morse believed it was likely that continuous water-bearing strata were present, any liner would not be totally impermeable, and the ground water resources of the surrounding area were not adequately protected. Morse also stated leachate would be inevitable and a leachate-collection system was necessary.

Clark prepared a traffic study for the written application. He testified that initially approximately 55 trucks per day would reach the landfill. Clark stated that the existing access road could handle the increased traffic. Clark also testified the entrance would be designed safely and a sufficient line of sight would be provided. Clark based his safety information on a 30-mile-per-hour speed limit.

Herbert Beckermeier, the county highway commissioner, testified the speed limit on the access road was 55 miles per hour. The 30-mile-per-hour sign seen by Clark was an advisory sign. The increased truck traffic would cause the road to deteriorate. The road would need resurfacing and widening to accommodate the garbage trucks. Becker-

meier stated that if the site was approved, the road commission and MCD could work together to prepare a safe entrance.

Lieutenant David Kistner, a traffic safety expert, testified that the line of sight was inadequate at the proposed entrance for safe stopping, the trucks pulling out slowly would cause a safety hazard, and the S-curve near the entrance would decrease visibility. Kistner testified about specific stopping distances, with alert drivers, and dry roads.

In rebuttal, Clark testified MCD had acquired additional land and could design a safe entrance.

### III. ANALYSIS

Initially, MCD argues the PCB should have examined the expert testimony under a more stringent standard because the county board does not have the expertise to resolve technical issues. MCD urges this court to reverse the PCB because it did not sufficiently review the expert testimony.

■ This argument has been addressed and rejected on numerous occasions. The county board has been charged by the legislature with the primary responsibility for deciding the public health ramifications of landfill siting. The PCB may not reweigh expert testimony to decide which expert is more qualified and more believable. (*Waste Management*, 160 Ill. App. 3d 434, 513 N.E.2d 592.) Similarly, this court may not reweigh the evidence to decide which expert is more believable. *Rockford*, 186 Ill. App. 3d 303, 542 N.E.2d 423.

■ Since the expert testimony in this case conflicted as to the safety of the designed site and as to its impact on traffic flow, we will not reweigh the evidence in assessing the PCB's determination. The agency's determination is not contrary to the manifest weight of the evidence.

■ MCD argues the county board had an obligation to follow the recommendation of its technical advisor. As authority, MCD cites a PCB case, *Watts Trucking Service, Inc. v. City of Rock Island* (1984), 57 Ill. PCB Op. 57-23, which was affirmed by the appellate court in an unpublished order (*Braet v. Pollution Control Board* (1985), 134 Ill. App. 3d 1161 (unpublished order under Supreme Court Rule 23)). An order pursuant to Supreme Court Rule 23 has no precedential value. (107 Ill. 2d R. 23.) Additionally, the facts of that case are markedly different from those presented here. In *Watts*, the city hired a consulting firm which offered testimony. Here, the county board's advisor did not testify. We know of no authority for the proposition that one is bound by an advisor's recommendation.

Finally, MCD argues site approval should be granted as a matter of law. The Act requires the county board to approve or deny a siting application within 180 days of the filing of the request. If a timely decision is not made, the siting application is deemed approved as a matter of law. (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(e).) McLean County accepted MCD's application for filing on March 17, 1987. On August 18, 1987, the county board denied the application. The 180-day period would have expired on September 13, 1987.

■ MCD argues the application must be deemed approved as a matter of law because the August 18, 1987, action was void and the June 20, 1989, decision was not within the 180-day period. This is a variation of the argument MCD raised in *CARL* (178 Ill. App. 3d 686, 533 N.E.2d 401). In that case, this court found MCD waived enforcement of the 180-day period stated in section 39.2(e) of the Act. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(e).) The holding and reasoning of *CARL* apply here. Additionally, the final action necessary under section 39.2(e) of the Act is the initial order of the county board which approves or denies the siting application. See *McHenry County Landfill*, 154 Ill. App. 3d 89, 506 N.E.2d 372.

For the above reasons, we affirm the Pollution Control Board.

Affirmed.

SPITZ and KNECHT, JJ., concur.